STATE of North Dakota, Plaintiff
and Appellee,

v.

Locke SMITH, Defendant and
Appellant.

Cr. No. 890143.

Supreme Court of North Dakota.

March 1, 1990.

James O. Johnson, Asst. State's Atty., Stanton, for plaintiff and appellee.

Benjamin C. Pulkrabek, Mandan, for defendant and appellant.

VANDE WALLE, Justice.

Locke Smith was charged with possession of firearms by a convicted felon in violation of § 62.1–02–01, N.D.C.C. Smith entered a conditional plea of guilty, pursuant to Rule 11(a)(2), N.D.R.Crim.P., reserving the right to appeal the district court's denial of his motion to suppress the firearms as evidence. The district court accepted Smith's plea and sentenced him to serve one year at the State Penitentiary. Smith appealed from the district court's order denying his motion to suppress. We affirm.

During the afternoon of November 7, 1988, Stanton Chief of Police Gary Bagley was on a routine patrol of Sakakawea City Park when he observed a car with one person, later identified as Smith, standing beside it. Another person was seated inside the car. No one else was at the park. Bagley also noticed what appeared to be a beer bottle on the roof of the car. Bagley observed Smith take the bottle off the roof

of the car, but at no time did he see Smith either sit on or in the car while holding the bottle.

By the time Bagley had driven around the park and arrived at the area where the car had been, the car and the two individuals were gone. Bagley discovered a beer bottle on the ground where Smith had been standing. Bagley picked up the beer bottle and noticed that it was about one-eighth full, cold, and that its contents had a "fresh odor." Believing that Smith had violated the open-bottle law,[1] Bagley pursued the vehicle to issue Smith a citation.

After stopping the vehicle, Bagley asked the driver for his drivers license. While doing so, Bagley noticed that there were three rifles lying in the front and back seats of the car. With the use of the drivers license, Bagley identified the driver as Smith, and knowing that Smith had a criminal record, Bagley ordered Smith out of the car and asked for assistance from the sheriff's office. When a deputy sheriff arrived, they decided to go to the sheriff's office and check Smith's record to see if he could possess firearms, and Bagley placed the guns in his patrol car. At the sheriff's office, while Bagley was writing out the citation for an open-bottle violation, he learned that because Smith was a convicted felon, he could not have firearms in his possession. At that point, Smith was arrested for being a felon in possession of firearms. On motion by the State's Attorney, the open-bottle charge subsequently dismissed by the county court because of "insufficient evidence."

During pre-trial proceedings, Bagley testified that the only reason he stopped Smith's vehicle was because he believed Smith had violated the open-bottle law while in the park. Smith argued to the trial court that Bagley had no justification for stopping his vehicle because Bagley did not understand the open-bottle law and erroneously believed that "an open bottle anywhere in public is a violation of 39–08–18." The trial court rejected this argument and denied the suppression motion. Smith has not asserted that Bagley used the alleged open-bottle violation as a pretext to stop his vehicle and search for evidence of other illegal activity or that the firearms were not in plain view in his automobile.

██ In *State v. Placek*, 386 N.W.2d 36, 37 (N.D.1986), we said: "The law governing investigative stops of automobiles is clear: an officer must have an articulable and reasonable suspicion that a motorist is violating the law in order to legally stop a vehicle." See also, *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Under the "articulable and reasonable suspicion" standard, the "articulable

---

1. The version of § 39–08–18, N.D.C.C., in effect at the time of the incident, provided:

   "*39–08–18. Open bottle law—Penalty.* No person may drink or consume alcoholic beverages, as defined in section 5–01–01, in or on any motor vehicle when such vehicle is upon a public highway or in an area used principally for public parking. No person may have in his possession on his person while in or on a private motor vehicle upon a public highway or in an area used principally for public parking, any bottle or receptacle containing such alcoholic beverages which has been opened, or the seal broken, or the contents of which have been partially removed. It is unlawful for the owner of any private motor vehicle or the driver, if the owner be not then present in or on the motor vehicle, to keep or allow to be kept in a motor vehicle when such vehicle is upon the public highway or in an area used principally for public parking any bottle or receptacle containing such alcoholic beverages which has been opened, or the seal broken, or the contents of which have been partially removed except when such bottle or recepta-

cle is kept in the trunk of the motor vehicle when such vehicle is equipped with a trunk, or kept in some other area of the vehicle not normally occupied by the driver or passengers, if the motor vehicle is not equipped with a trunk. A utility compartment or glove compartment must be deemed to be within the area occupied by the driver and passengers. The provisions of this section do not prohibit the consumption or possession of alcoholic beverages in a house car, as defined by subsection 23 of section 39–01–01, if the consumption or possession occurs in the area of the house car used as sleeping or living quarters and that area is separated from the driving compartment by a solid partition, door, curtain, or some similar means of separation; however, consumption is not authorized while the house car is in motion. Any person violating the provisions of this section must be assessed a fee of fifty dollars; however, the licensing authority may not record the violation against the driving record of such person unless he was the driver of the automobile at the time that the violation occurred."

aspect requires that the stop be justified with more than just a vague 'hunch' or other non-objective facts; and the reasonable aspect means that the articulable facts must produce, by reasonable inference, a *reasonable* suspicion of unlawful conduct." *State v. VandeHoven*, 388 N.W.2d 857, 858 n. 1 (N.D.1986) [Emphasis in original]. The standard is an objective one, and we take into account inferences and deductions that an investigating officer would make that may elude a layperson. *State v. Thordarson*, 440 N.W.2d 510 (N.D.1989); *State v. VandeHoven, supra.* The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity. *State v. Indvik*, 382 N.W.2d 623 (N.D.1986).

Smith asserts that, because Bagley never observed Smith in or on the car while holding the beer bottle, no violation of § 39–08–18 occurred, and although Bagley nevertheless erroneously believed he had witnessed a violation of the open-bottle law, this cannot amount to an articulable and reasonable suspicion to justify the stop. We disagree for two reasons.

■ First, an evaluation of whether there was reasonable suspicion to justify the stop does not depend on whether the grounds for the stop will ultimately result in conviction. Even with regard to probable cause to arrest, a much more exacting standard, the United States Supreme Court has said:

> "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest."

*Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979); see also, *State v. Goeman*, 431 N.W.2d 290 (N.D.1988). Thus, the State's dismissal of the open-bottle charge is irrelevant to the

determination of the validity of the stop. Moreover, Bagley's alleged misunderstanding of the open-bottle law is not dispositive because, as we have already noted, reasonable suspicion is measured by an objective standard rather than by the officer's subjective belief. "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' ... and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470–471, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985) [quoting *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1722, 56 L.Ed.2d 168 (1978)]. We must therefore focus on whether a reasonable person in Bagley's position would have been justified in suspecting that Smith had committed an open-bottle violation.

■ In this case, Bagley observed Smith in the city park in November standing by a car. Bagley saw what appeared to be a beer bottle on the roof of the car and another person seated inside the car. Bagley saw Smith hold the bottle, albeit not while Smith was either on or in the car. Section 39–08–18, noted earlier, is a relatively complex statute which draws a very fine line between what does and what does not constitute an open-bottle violation. Given the time of year and the surrounding circumstances, we cannot say that a reasonable person in Bagley's position would not have been justified in suspecting that Smith had violated the open-bottle law. Bagley's belief that the violation occurred was reasonably inferable from what he observed at the park. We conclude that Bagley's suspicion of unlawful conduct was both articulable and reasonable and that the stop was therefore lawful.

Second, even assuming for purposes of argument that Bagley did not have an articulable and reasonable suspicion that Smith had committed an open-bottle violation, it does not automatically follow that the stop was invalid. In the context of probable cause to arrest, courts have held that, except for pretextual arrests, when

an officer makes an arrest which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which there is no probable cause, nor his verbal announcement of the wrong offense, vitiates the arrest. E.g., *United States v. Lester,* 647 F.2d 869 (8th Cir.1981); *People v. Corrigan,* 129 Ill.App.3d 787, 84 Ill.Dec. 924, 473 N.E.2d 140 (1985) [citing *People v. Kincy,* 106 Ill.App.3d 250, 62 Ill.Dec. 33, 435 N.E.2d 831 (1982)]. See also *State v. Klevgaard,* 306 N.W.2d 185 (N.D.1981). "Any other rule would force police officers to routinely charge every citizen taken into custody with every offense they thought he could be held for in order to increase the chances that at least one charge would survive the test for probable cause. Such a clogging of the criminal process already heavily encumbered, would be pointless." *United States v. Atkinson,* 450 F.2d 835, 838 (5th Cir.1971), *cert. denied,* 406 U.S. 923, 92 S.Ct. 1790, 32 L.Ed.2d 123 (1972).[2] As the Louisiana Supreme Court has explained:

> "The question ... is whether an arrest for a crime for which probable cause does not exist can ever be justified by the probable cause to arrest for another offense. Although the question appears to be res nova in Louisiana, several of the federal courts of appeal have given an affirmative answer in cases in which the arrest was not a pretext for an illegal search, but in which the officer, who had probable cause to arrest the defendant for a related offense, simply arrested him for the wrong reason. *United States v. Joyner,* 160 U.S.App.D.C. 389, 492 F.2d 655 (1974); *Chaney v. Wainwright,* 460 F.2d 1263 (5th Cir.1972); *Ricehill v. Brewer,* 459 F.2d 537 (8th Cir.1972); *Klingler v. United States,* 409 F.2d 299 (8th Cir.1969). The rationale for these holdings seems to be that, except for pretextual arrests, which are shams and not considered arrests at all, *Mills v. Wainwright,* 415 F.2d 787 (5th Cir.1969); *Amador–Gonzalez v. United States,* 391 F.2d 308 (5th Cir.1968); *Green v. United States,* 386 F.2d 953 (10th Cir.1967), the constitution requires only that an officer's actions be justified against an objective standard of probable cause, and it does not require that the state be penalized for a purely subjective mistake by an officer. *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Klingler v. United States,* 409 F.2d 299 (8th Cir.1969). We agree with the federal decisions and their underlying reasons."

*State v. Wilkens,* 364 So.2d 934, 937 (La. 1978). See also the cases collected in 1 W. LaFave *Search and Seizure* § 1.4(d) (2d ed. 1987) and 2 W. LaFave *Search and Seizure* § 5.1(e) (2d ed. 1987). The same rule applies to police investigatory practices short of formal arrest. See *Berge v. Commissioner of Public Safety,* 374 N.W.2d 730, 733 n. 1 (Minn.1985); *State v. Pleas,* 329 N.W.2d 329 (Minn.1983).

■ In this case, even if Bagley did not have an adequate basis to stop Smith for an open-container violation, he certainly would have been justified in stopping and issuing Smith a citation for unlawful deposit of refuse[3] when he found the nearly

---

**2.** The court in *United States v. Atkinson* added the following caveat:

> "This is not to say that this Court will indulge in *ex post facto* extrapolations of all crimes that might have been charged on a given set of facts at the moment of arrest, nor that we will look favorably upon arguments of the government doing the same. Such an exercise might permit an arrest that was a sham or fraud at the outset, really unrelated to the crime for which probable cause to arrest was actually present to be retroactively validated."

**3.** Section 20.1–01–25, N.D.C.C., provides:

> "20.1–01–25. *Deposit of refuse unlawful—Penalty.* The deposit of litter, refuse, rubbish, bottles, cans, or other waste materials, on or in the vicinity of any game refuge, lake, river, public park, or recreation area is prohibited. Police officers, sheriffs, deputies, and game and fish department personnel shall enforce this section. Any person who violates this section is guilty of a class 1 noncriminal offense."

In addition, Bagley testified that at the time of the incident, there was a park ordinance prohibiting the use of glass bottles in the city park.

empty bottle of beer lying in the park where Smith had been standing. Both offenses are related because they arise from the same set of factual circumstances. There being no assertions that this was a pretextual stop or that the firearms were not in plain view, we conclude that the stop was valid and that the trial court properly denied Smith's motion to suppress. See *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980).

Affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.