2005 ND 21

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Jesse Lynn SMITH, Defendant and Appellant.**

**Nos. 20040114, 20040115.**

Supreme Court of North Dakota.

Jan. 19, 2005.

Rehearing Denied Feb. 16, 2005.

Kathleen K. Trosen, State's Attorney, Fessenden, N.D., for plaintiff and appellee.

Brian W. Nelson (on brief), Nelson, Blumer & Johnson, P.L.L.P., Fargo, N.D., and Thomas J. Glass (argued), Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶1] Jesse Smith appeals two judgments of conviction of unlawful possession of drug paraphernalia and possession of a controlled substance. Concluding Smith was unlawfully stopped, we reverse the judgments of conviction of unlawful possession of drug paraphernalia and possession of a controlled substance and remand for further proceedings.

I

[¶2] On May 25, 2002, at about 12:30 a.m., Fessenden Police Chief Allen Kluth was approached by two local citizens regarding a suspicious vehicle parked behind a bulk fuel truck in the Cenex lot. Chief Kluth testified the citizens told him a green station wagon left the Cenex lot quickly, spinning out on the gravel, as they approached the vehicle. They told Chief Kluth they followed the vehicle to obtain its license plate number, but they were unable to get the full number because the station wagon was traveling at a high rate of speed. Chief Kluth and Highway Patrolman Jody Skogen went to view the tire tracks at the Cenex station, which has been broken into several times in recent years. Chief Kluth then contacted a Harvey Police Officer, Marc Balfour, and told him to be on the lookout for a green station wagon traveling west on highway 52. Officer Balfour testified he spotted a green station wagon and radioed Chief Kluth to tell him he saw a vehicle that matched the description. Chief Kluth told him to stop the vehicle. Officer Balfour testified that he did not observe any traffic violations at the time he pulled the vehicle over.

[¶3] After he approached the vehicle, Officer Balfour saw an open case of beer in the back seat and detected a strong odor of alcohol coming from the vehicle. He then asked Smith to accompany him back

to the police car. Officer Balfour told Smith of the suspicious activity in the Cenex parking lot, and Smith explained that he and his friend had to go to the bathroom but that the store was locked so they went outside near the bulk fuel truck. Officer Balfour testified that he then asked Smith for his consent to search the vehicle. Smith replied, "Yeah, go ahead."

[¶ 4] When Patrolman Skogen arrived, Officer Balfour turned the investigation over to him and told him Smith had given him consent to search the vehicle. Officer Balfour then went back to Smith's vehicle and asked the passenger, Travis Cunningham, to come back to his police car. He examined Cunningham's driver's license, which showed that he was only 20 years old. He then placed Cunningham in the back seat of the patrol car and began to search Smith's vehicle. Officer Balfour testified that when he walked up to the vehicle, he noticed two spilled cans of beer on the passenger-side floor. He then found a backpack in the back seat of the car, and upon opening it, found eight rolled baggies of marijuana.

[¶ 5] The State charged Smith with four counts: possession of drug paraphernalia, Wells County case no. 02–K–087; possession of a controlled substance, Wells County case no. 02–K–088; possession of a controlled substance with intent to deliver, Wells County case no. 02–K–089; and delivery of alcoholic beverages to a person under twenty-one years of age, · Wells County case no. 02–K–090. On September 18, 2002, the district court consolidated all four counts. On October 10, 2002, Smith moved to suppress all items seized by law enforcement officers and all· of the statements he made during the arrest. Smith's motion included only Wells County case number 02–K–089 in its motion heading. The district court held a hearing on February 5, 2003, on the motion to suppress and issued a memorandum and order denying the motion to suppress on October 30, 2003. The transcript of the February 5 hearing included all four Wells County case numbers, while the memorandum contained only the Wells County case number 02–K–089.

[¶ 6] A jury found Smith guilty of all charges on March 31, 2004, except for possession of a controlled substance with intent to deliver, Wells County case number 02–K–089.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art.˙ VI, §§ 2, 6, and N.D.C.C. § 29–28–06.

## II

■ [¶ 8] The State claims Smith does not have the right to appeal, because he attempted to suppress evidence relating to the acquitted charge of possession of a controlled substance with the intent to distribute.

[¶ 9] A defendant may appeal a verdict of guilty, but may not appeal an order on a motion to suppress, absent an appealable order of judgment. N.D.C.C. § 29–28–06. Motions to suppress evidence on the grounds that the evidence was unlawfully obtained must be raised prior to trial. N.D.R.Crim.P. 12(b)(3).

[¶ 10] Smith is appealing two criminal judgments: possession of drug paraphernalia, Wells County number 02–K–087; and possession of a controlled substance, Wells County number 02–K–088. Prior to the trial, he moved to suppress all evidence and statements made the day of his arrest. His motion was titled "Motions to Suppress" and had the Wells County criminal number 02–K–089 in its heading. The transcript of the motion-to-suppress hear-

ing prepared by the court included every count in its title; however, the memorandum and order denying the motion to suppress issued by the district court indicated only case number 02–K–089. The letter accompanying the memorandum from the district court to Smith's counsel indicated the motion was in regard to all four criminal counts. We conclude the omission of the criminal case numbers on the memorandum and order denying the motion to suppress was a clerical error and Smith properly preserved his right to appeal.

### III

[¶ 11] When we review a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *State v. Gregg*, 2000 ND 154, ¶ 19, 615 N.W.2d 515. We will affirm a district court's decision if "there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994). "We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact." *Id.* Questions of law and the ultimate conclusion about whether the facts support a reasonable and articulable suspicion are fully reviewable on appeal. *Gregg*, at ¶ 20.

[¶ 12] "All searches and seizures must be reasonable, under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the North Dakota Constitution." *State v. Haibeck*, 2004 ND 163, ¶ 9, 685 N.W.2d 512. A traffic stop temporarily restrains a person's freedom, resulting in a seizure within the meaning of the Fourth Amendment. *State v. Sarhegyi*, 492 N.W.2d 284, 285–86 (N.D.1992). A traffic stop, under the facts of this case, is analogous to a *"Terry"* stop

and must be analyzed under its test. *Id.* at 286. In reviewing a *Terry* stop, a court must "(1) determine whether the facts warranted the intrusion of the individual's Fourth Amendment rights, and if so, (2) determine whether the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place." *Id.* To minimize governmental confrontation with individuals, as required by the Fourth Amendment, an investigating officer must have a reasonable suspicion that a law has been or is being violated. *Id.*

[¶ 13] The investigating officer, however, does not need personal knowledge that a law has been or is being violated. A directing officer's knowledge may be imputed to an acting officer when the directing officer relays a directive or request to the acting officer without relaying the underlying facts and circumstances. *City of Devils Lake v. Lawrence*, 2002 ND 31, ¶ 9, 639 N.W.2d 466. An arresting officer may make an arrest upon a directive even when he is unaware of the factual bases for probable cause, because the arresting officer is entitled to assume that whoever issued the directive had probable cause. *State v. Kenner*, 1997 ND 1, ¶ 11, 559 N.W.2d 538. The same principle would apply in the reasonable-suspicion context. *Id.*

[¶ 14] We have upheld investigatory stops of vehicles when the stopping officer received a tip from another police officer or informant and then corroborated the information by personal observations. *Id.* at ¶ 12. Officer Balfour testified, however, that he did not observe any violations before he stopped the car. We look at the context in which the directing officer obtained the information and analyze it to see whether it constitutes reasonable and articulable suspicion.

[¶ 15] ."To stop a moving vehicle for investigative purposes, an officer must have an articulable and reasonable suspicion that a law has been or is being violated." *Lawrence*, 2002 ND 31, ¶ 8, 639 N.W.2d 466. "Reasonable suspicion for a stop exists when a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity." *Id.* Reasonable suspicion requires more than a "mere hunch." *Id.* We use an objective standard and view the totality of the circumstances to determine whether an investigative stop is valid. *Id.*

> We do not require an officer to isolate single factors which signal a potential violation of the law; but instead, "officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." When assessing reasonableness, we consider inferences and deductions an investigating officer would make which may elude a layperson.

*Id.* (quoting *City of Fargo v. Ovind*, 1998 ND 69, ¶ 9, 575 N.W.2d 901 (citations omitted)).

[¶ 16] The State argues Chief Kluth had the requisite reasonable suspicion to tell Officer Balfour to stop Smith's car. The information obtained by a police officer from an anonymous informant cannot alone establish probable cause if the tip provides virtually nothing from which a person might conclude the informant is honest or his information is reliable, or if the information gives absolutely no indication of the basis for identifying the criminal activities. *City of Minot v. Nelson*, 462 N.W.2d 460, 462 (N.D.1990). The information obtained from an anonymous informant and used for an investigative stop "must be sufficiently reliable to support a reasonable suspicion of unlawful conduct, though not the more exacting standard of probable cause necessary to make an arrest." *Id.*

[¶ 17] In the case at bar, Chief Kluth received information from two local citizens about a car leaving the Cenex station after being approached by the two citizens. Chief Kluth, along with Patrolman Skogen, went to the Cenex station to view the tire marks. Chief Kluth testified he did not conclude his investigation until the next day, because the Cenex station had been broken into several times in recent years and he needed to check with the Cenex manager and bulk truck driver to see whether there was any vandalism or whether any fuel was taken.

[¶ 18] The State asserts the facts in this case are similar to those in *State v. Corum*, 2003 ND 89, 663 N.W.2d 151. This Court noted in *Corum* that "although an area's reputation for criminal activity is an articulable fact on which a police officer may legitimately rely, it cannot *solely* support a finding of reasonable suspicion." *Id.* at ¶ 13 (citations omitted). The Court stated the additional fact that the occupants of the vehicle were outside of their car with a flashlight at 4:00 a.m. near a previously burglarized anhydrous ammonia storage tank located in a rural area was significant in concluding there "was a reasonable and articulable suspicion of unlawful activity justifying an investigative stop of the vehicle." *Id.* at ¶ 16.

[¶ 19] Smith argues this case is more similar to *Sarhegyi*, in which this Court said that a police officer did not have a

reasonable suspicion to stop a car that was parked in a farm implement lot at 1:30 a.m. when the driver turned the car's headlights on and attempted to leave when the officer entered the parking lot. *Sarhegyi*, 492 N.W.2d at 285. This Court noted the officer testified that the defendant did not violate "any traffic law prior to the stop, that there were no indicia of an emergency of any kind, and that there were no reports of criminal activity in the area." *Id.* at 286. This Court noted the only bases for the officer's suspicions—the time of night, the burglary possibilities, the safety of the occupant, whether the car was stolen, whether someone needed assistance, and the fact that the defendant began to pull away from the officer—either conflicted with his testimony or were legally insufficient for reasonable suspicion. *Id.* Adopting language from court cases in other jurisdictions, this Court said that unless "combined with other objectively valid indicia of suspicion, courts have held that mere avoidance of a police car is insufficient unless erratic, fast, and extreme." *Id.* at 287.

[¶ 20]. The facts in this case are closer to the factual situation in *Sarhegyi* than in *Corum*. Smith and Cunningham were in the Fessenden Cenex parking lot around midnight, just sitting in the car when the residents approached. There was no testimony to indicate any kind of emergency, there were no reports of criminal activity in the area, and there was no indication of safety concerns of the occupants. There was testimony that they pulled out of the parking lot quickly, spinning gravel, but this is not the same as erratic, fast, and extreme driving to avoid a police officer. Their flight from the lot after being approached in the dark by two persons unknown to them is more reasonable and less suspicious than someone's fleeing from a marked police vehicle.

Smith could have been concerned for their safety, which would make his quick departure from the lot less suspicious. Smith's sitting in the parking lot, like the defendant in *Sarhegyi*, by itself is not a reasonable and articulable suspicion to order another police officer to stop the vehicle.

[¶ 21] With the addition of at least another factor, courts have upheld circumstances that involve a stop of an seemingly innocent car. *Sarhegyi*, 492 N.W.2d at 287.

See *State v. Hornaday*, 477 N.W.2d 245 (N.D.1991) [officer informed that three people in vehicle parked in a shopping center parking lot were drunk and officer observed occupants drinking a beverage]; *State v. Rodriguez*, 454 N.W.2d 726 (N.D.1990) [arrest warrant as to the person affiliated with the vehicle]; *State v. Smith*, 452 N.W.2d 86 (N.D.1990) [beer bottles around car, suspicion of open-bottle law violation]; *Geiger v. Backes*, 444 N.W.2d 692 (N.D.1989) [high crime area, known license suspension]; *State v. Thordarson*, 440 N.W.2d 510 (N.D.1989) [unidentified call and observed speeding]; *Wibben v. North Dakota Highway Comm'r*, 413 N.W.2d 329 (N.D.1987) [officer verifies details of anonymous tip]; *State v. Placek*, 386 N.W.2d 36 (N.D.1986) [rear lights not operating]; *State v. Schwartz*, [239 Neb. 84,] 474 N.W.2d 461 (1991) [vehicle matched description of that involved in previous criminal activity]; *People v. Murray*, [137 Ill.2d 382, 148 Ill.Dec. 7,] 560 N.E.2d 309 (1990) [community caretaking function in approaching car on roadside with sleeping occupant inside]; *State v. Rein*, [234 Neb. 917,] 453 N.W.2d 114 (1990) [recent vandalism where the car was parked]; *State v. Johnson*, 444 N.W.2d 824 (Minn.1989) [sudden and extreme evasive conduct after seeing police]; *State v. Clayton*, [113 Idaho 817,] 748 P.2d 401 (1988) [driver

slumped over wheel, ignition on]; *State v. Kuskowski,* [200 Conn. 82,] 510 A.2d 172 (1986) [driver unconscious and propane tank lit inside car]; *State v. Boswell,* [170 W.Va. 433,] 294 S.E.2d 287 (1982) [nearby bar's history of problems with disorderly conduct, conduct of vehicle's occupants]; *People v. Ledwa,* [81 Ill.App.3d 276, 36 Ill.Dec. 617,] 401 N.E.2d 298 (1980) [driver asleep]; *State v. Montoya,* [94 N.M. 542,] 612 P.2d 1353 (App.1980) [officer investigating burglary scene notices stolen items in plain view]; *Guardiola v. State,* [268 Ind. 404,] 375 N.E.2d 1105 (1978) [car against fence pole, driver lying in front seat].

*Sarhegyi,* 492 N.W.2d at 287–288.

[¶ 22] The State argues the additional facts, including the spinning out of the parking lot on gravel and speeding away down the road, would lead a police officer to find reasonable suspicion. The State also claims there was a possibility of burglary because Cenex had been broken into before and there were wet spots behind the bulk fuel tank. We conclude these factual circumstances do not rise to the level of reasonable and articulable suspicion.

[¶ 23] The State also argues the police officer was justified in ordering a "freeze" of the situation. In cases involving a limited investigative stop near the scene of a recent crime, when the corroboration of a tip by observing the illegality may not be practical, we have said police may "freeze" a situation. *Lawrence,* 2002 ND 31, ¶ 11, 639 N.W.2d 466. In *Lawrence,* a police officer ordered a freeze of the vehicles in a parking lot after he received a call of a fight outside of a bar. *Id.* at ¶ 2. We held that the officer properly ordered a freeze of the area so he could reasonably investigate the situation. *Id.* at ¶ 17. *Lawrence* is distinguishable

from this case, however, because Smith was several miles away from the reported activity when Chief Kluth ordered Officer Balfour to stop the vehicle. A police officer may not freeze an illimitable area to conduct his search.

[¶ 24] We therefore conclude that neither Officer Balfour nor Chief Kluth had a reasonable and articulable suspicion to stop Smith.

## IV

[¶ 25] The State argues, even if the officer did not have a reasonable suspicion to pull the vehicle over, the search is still valid because Smith consented to the search.

[¶ 26] The State argues the consent was purged of the unlawful stop because it was given voluntarily as defined in *United States v. Beason,* 220 F.3d 964, 967 (8th Cir.2000). We use the totality-of-the-circumstances test to determine whether consent is given voluntarily. *State v. Mitzel,* 2004 ND 157, ¶ 25, 685 N.W.2d 120; *City of Fargo v. Ellison,* 2001 ND 175, ¶ 13, 635 N.W.2d 151. In *Beason,* the Eighth Circuit said an act of free will by the defendant may purge the primary taint of the unlawful stop. 220 F.3d at 967. The court said that to determine whether the consent was voluntary, a court examines the totality of the circumstances. *Id.* *Beason's* singular totality-of-the-circumstances approach, however, was abandoned in *United States v. Becker,* 333 F.3d 858, 862 n. 4 (8th Cir.2003). In *Becker,* the court opined that "voluntary consent to a search, preceded by an illegal police action, does not automatically purge the taint of an illegal detention." *Id.* at 862; *see also* 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 8.2(d) at 656 (3rd ed. & Supp.2004); *United States v. Santa,* 236 F.3d 662, 676–

77 (11th Cir.2000). A second inquiry is necessary to determine whether the taint is purged from the evidence seized during the allegedly unlawful detention by considering the "following factors: (1) the temporal proximity between the illegal search or seizure and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Becker*, 333 F.3d at 862; *see also United States v. Portillo–Aguirre*, 311 F.3d 647, 659 (5th Cir.2002); *Commonwealth v. Freeman*, 563 Pa. 82, 757 A.2d 903, 909 (2000); *State v. Phillips*, 218 Wis.2d 180, 577 N.W.2d 794, 805–06 (1998); *United States v. Melendez–Garcia*, 28 F.3d 1046, 1054 (10th Cir.1994). If the consent is not purged of the unlawful detention, it is still fruit of the poisonous tree. *United States v. Cellitti*, 387 F.3d 618, 623 (7th Cir.2004); *United States v. Lopez–Arias*, 344 F.3d 623, 629 (6th Cir.2003); *United States v. Chavez–Villarreal*, 3 F.3d 124, 127–28 (5th Cir.1993); *State v. Pau'u*, 72 Haw. 505, 824 P.2d 833, 836 (1992).

[¶ 27] Because the district court did not determine the stop was unlawful, it did not address the issue of whether Smith's consent to search his car was voluntary under the totality of the circumstances, which included an unlawful stop, and whether the consent was purged of the taint from the unlawful stop. To apply the correct legal standard regarding consent following an unlawful detention, the district court must determine whether the consent to search the car was voluntary in view of the unlawful stop and, if so, was sufficiently purged of the taint from the unlawful stop.

[¶ 28] The State also argues several different theories to justify the unlawful search and seizure, including: search incident to arrest, the automobile exception, and inevitable discovery.

[¶ 29] All of these remedial measures suggested by the State fail because they follow the unlawful stop of the vehicle. A search incident to arrest exception applies if: (1) the arresting officer had probable cause to arrest the defendant before searching him; and (2) the arrest was substantially contemporaneous to the search. *State v. Overby*, 1999 ND 47, ¶ 9, 590 N.W.2d 703. We concluded the officer was not justified in stopping Smith, so the search incident to arrest fails.

[¶ 30] A police officer may make a valid search of an automobile upon probable cause without a warrant if the officer has a reasonable belief, arising out of the circumstances known to the officer, that the automobile contains articles that are subject to seizure. *Gregg*, 2000 ND 154, ¶ 33, 615 N.W.2d 515. Again, the automobile exception fails because there was no reasonable and articulable suspicion to stop the vehicle.

[¶ 31] "The inevitable-discovery doctrine provides that evidence obtained from information procured in an unlawful search or seizure is admissible under the fruit-of-the-poisonous-tree doctrine if the evidence would inevitably have been discovered without the unlawful conduct." *Gregg*, 2000 ND 154, ¶ 51, 615 N.W.2d 515. This Court has established a two-part test for analyzing the inevitable-discovery doctrine. *State v. Handtmann*, 437 N.W.2d 830, 837–38 (N.D.1989).

> First, use of the doctrine is permitted only when the police have not acted in bad faith to accelerate the discovery of the evidence in question. Second, the State must prove that the evidence would have been found without the unlawful activity and must show how the discovery of the evidence would have occurred.... A showing that discovery might have occurred is entirely inadequate.

*Id.* at 838 (citations omitted). Inevitable discovery does not apply in Smith's case, because the police officers would not have found the evidence without the unlawful activity.

[¶ 32] The unlawful activity in this case was the stop, not the questioning of the passenger. Because the stop was unlawful, the subsequent remedial measures offered by the State would not cure the defect of the stop.

V

[¶ 33] We reverse the judgments of conviction and remand for further proceedings consistent with this opinion.

[¶ 34] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.