2016 ND 116

**Jody James JANGULA, Petitioner and Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

No. 20150286.

Supreme Court of North Dakota.

June 30, 2016.

Chad R. McCabe, Bismarck, N.D., for petitioner and appellant.

Michael T. Pitcher, Office of the Attorney General, Bismarck, N.D., for respondent and appellee.

CROTHERS, Justice.

[¶ 1] Jody Jangula appeals from a district court judgment affirming a Department of Transportation hearing officer's decision suspending his driving privileges for two years. We affirm, concluding the hearing officer did not abuse its discretion in admitting the analytical report of a blood sample into evidence at the administrative hearing.

I

[¶ 2] In January 2015 Jangula was charged with actual physical control of a vehicle while under the influence. Jangula was issued a report and notice form, notifying him of the Department's intent to

suspend his driving privileges. Jangula requested an administrative hearing.

[¶ 3] At the February 2015 hearing the Department offered a number of exhibits into evidence, including exhibit 1 showing Jangula's blood alcohol concentration of .226 percent by weight. Jangula objected, contending the analytical report had not been certified or authenticated and the Department had not complied with the relevant statutes and rules of evidence. The hearing officer overruled Jangula's objections and admitted the exhibit into evidence.

[¶ 4] The hearing officer suspended Jangula's driving privileges for two years. Jangula appealed to the district court, which affirmed.

## II

[¶ 5] Our review of an administrative agency decision to suspend a person's driving privileges is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Painte v. Dir., Dep't of Transp.*, 2013 ND 95, ¶ 6, 832 N.W.2d 319. We review the agency decision under N.D.C.C. § 28–32–49 in the same manner as the district court under N.D.C.C. § 28–32–46. We will affirm the agency's decision unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46.

[¶ 6] "In deciding whether an agency's findings of fact are supported by a preponderance of the evidence, our review is confined to the record before the agency and to determining whether a reasoning mind reasonably could have determined the factual conclusions were proven by the weight of the evidence." *Painte*, 2013 ND 95, ¶ 7, 832 N.W.2d 319 (quotation marks omitted). We defer to an agency's ruling by not making independent findings of fact or by substituting our own judgment for that of the agency, but questions of law are fully reviewable on appeal. *Id.* "When an appeal involves the interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the agency's order is not in accordance with the law." *Roberts v. N.D. Dep't of Transp.*, 2015 ND 137, ¶ 5, 863 N.W.2d 529 (quoting *Harter v. N.D. Dep't of Transp.*, 2005 ND 70, ¶ 7, 694 N.W.2d 677 (quotation marks omitted)).

## III

[¶ 7] Jangula argues the hearing officer erred admitting the analytical report into evidence because the Department did not comply with either N.D.C.C. § 39–20–07(8) or N.D.R.Ev. 902.

[¶ 8] "The admissibility of evidence at an adjudicative hearing before an administrative agency is governed by the North Dakota Rules of Evidence." *Dawson v. N.D. Dep't of Transp.*, 2013 ND 62, ¶ 12, 830 N.W.2d 221 (quoting *May v. Sprynczynatyk*, 2005 ND 76, ¶ 24, 695 N.W.2d 196); *see also* N.D.C.C. § 28–32–24(1). A hearing officer has broad discretion in controlling the admission of evidence at the hearing and the hearing officer's decision to admit or exclude evidence will only be reversed on appeal when there is an abuse of discretion. *Dawson*, at ¶ 12; *May*, at ¶ 24. "A hearing officer abuses her discretion when she acts in an arbitrary, unreasonable, or capricious manner or misapplies or misinterprets the law." *Dawson*, at ¶ 12; *see also Knudson v. Dir., N.D. Dep't of Transp.*, 530 N.W.2d 313, 316 (N.D.1995).

[¶ 9] Jangula contends the hearing officer erred in receiving the analytical report into evidence because the report is not a "certified" copy under N.D.C.C. § 39–20–07. He contends a "certified" copy must comply with N.D.C.C. § 31–04–10, which states:

"Whenever a copy of a writing is certified for the purpose of evidence, the certificate must state in substance that the copy is a correct copy of the original, or of a specified part thereof, as the case may be. The certificate must be under the official seal of the certifying officer, if there is any, or if such officer is a clerk of a court having a seal, under the seal of such court."

[¶ 10] Jangula argues that to establish the documents are certified, the Department must authenticate the documents before being admitted into evidence. He essentially contends the Department must establish either the authenticity of the documents with extrinsic evidence under N.D.R.Ev. 901, or as self-authenticating

documents under N.D.R.Ev. 902. He asserts the documents in this case were not "under seal" and did not "establish from an employee certified under seal that the signer had the official capacity and that the signature was genuine."

[¶ 11] Generally, statutory interpretation presents a question of law. *Dakota Res. Council v. N.D. Public Serv. Comm'n*, 2012 ND 72, ¶ 8, 815 N.W.2d 286.

" 'Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision.' [*Industrial Contractors, Inc. v. Workforce Safety & Ins.*, 2009 ND 157, ¶ 6, 772 N.W.2d 582] (quotation omitted). 'Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07.' *Id.* at ¶ 11 (quotation omitted). When a statute is clear and unambiguous, 'the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.' N.D.C.C. § 1–02–05."

*Dakota Res. Council*, at ¶ 8.

[¶ 12] At an administrative hearing, certain records of the Department and state crime laboratory are statutorily deemed prima facie evidence of their contents without further foundation. *See* N.D.C.C. § 39–20–05. At the time relevant to this case, N.D.C.C. § 39–20–05(2) (2013), stated, "[A] copy of a certified copy of an analytical report of a blood ... sample from the director of the state crime laboratory or the director's designee, ... and a copy of a certified copy of a certificate of the director of the state crime laboratory designating the director's designees, establish prima facie the alcohol con-

centration ... shown therein." Also, N.D.C.C. § 39–20–05(4) (2013) provided:

"At a hearing under this section, the *regularly kept records* of the director and state crime laboratory may be introduced. Those records establish prima facie their contents without further foundation. For purposes of this chapter, *the following are deemed regularly kept records* of the director and state crime laboratory:

a. *Any copy of a certified copy of an analytical report of a blood or urine sample* received by the director from the director of the state crime laboratory or the director's designee or electronically posted by the director of the state crime laboratory or the director's designee on the crime laboratory information management system and certified by, and received from, a law enforcement officer or an individual who has authorized access to the crime laboratory management system through the criminal justice data information sharing system, or a certified copy of the checklist and test records received by the director from a certified breath test operator;

b. *Any copy of a certified copy of a certificate of the director of the state crime laboratory or the director's designee relating to approved methods, devices, operators, materials, and checklists used for testing for alcohol concentration or the presence of drugs* received by the director from the director of the state crime laboratory or the director's designee, or that have been electronically posted with the state crime laboratory division of the attorney general at the attorney general website; and

c. *Any copy of a certified copy of a certificate of the director of the state crime laboratory designating the director's designees."*

(Emphasis added.)

[¶ 13] Although not an exclusive method to admit test results into evidence, N.D.C.C. § 39–20–07 provides a "shortcut" to ease the burden in laying evidentiary foundation for a blood-alcohol report. *See Painte,* 2013 ND 95, ¶ 20, 832 N.W.2d 319; *Schlosser v. N.D. Dep't of Transp.,* 2009 ND 173, ¶ 10, 775 N.W.2d 695. Section 39–20–07, N.D.C.C., provides in part:

"Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any individual while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, evidence of the amount of alcohol concentration or presence of other drugs, or a combination thereof, in the individual's blood, breath, or urine at the time of the act alleged as shown by a chemical analysis of the blood, breath, or urine is admissible. For the purpose of this section:

. . . .

5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee. The director of the state crime laboratory or the director's designee is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications

of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the individual requested to take the chemical test.

. . . .

7. Copies of the state crime laboratory certified records referred to in subsections 5 and 6 that have been electronically posted with the state crime laboratory division of the attorney general at the attorney general website must be admitted as prima facie evidence of the matters stated in the records.

8. *A certified copy of the analytical report of a blood or urine analysis* referred to in subsection 5 and *which is issued by the director of the state crime laboratory or the director's designee must be accepted as prima facie evidence* of the results of a chemical analysis performed under this chapter. The *certified copy* satisfies the directives of subsection 5."

(Emphasis added.)

[¶ 14] The Department contends proper foundation exists to admit the analytical report because Forensic Scientist Jeremiah Smith identified himself on the analytical report as a "designee of the Director of the North Dakota Office of Attorney General, Crime Laboratory Division;" Smith states the analytical report is a true and correct copy of the original on electronic file at the Attorney General's office; the analytical report bears the seal of the North Dakota Office of Attorney General, Crime Laboratory Division; and Smith is identified on the "List of Individuals Certified to Conduct Blood Alcohol Analysis (August 1, 2012)." We agree sufficient foundation was established.

[¶ 15] In this record exhibit 1 includes exhibit 1a through 1n. Exhibit 1a is a signed certification page stating, "The undersigned, having legal custody, certifies that the information contained herein, consisting of 14 pages (including this page), is a true and correct copy of the original as appears in the files and records of this division as of 1/28/2015." This certification page is signed by Glenn Jackson, the Department's director of the Drivers License Division. Exhibit 1 also includes the analytical report containing the state seal and stating it is from the Office of Attorney General, Crime Laboratory Division. This analytical report was signed by Jeremiah N. Smith as a forensic scientist with the Crime Laboratory Division and includes the note:

"The undersigned forensic scientist, designee of the Director of the North Dakota Office of Attorney General, Crime Laboratory Division, certifies this Standard Forensic Advantage Discovery Packet containing the Toxicology Alcohol/Volatiles Analytical Report and Submission for Blood (Form 104) are true and correct copies of the originals on electronic file at the North Dakota Office of Attorney General, Crime Laboratory Division. I further certify the analysis of the blood sample has been performed according to the methods and with a device approved by the State Toxicologist and I am certified by the State Toxicologist to conduct blood analysis to determine alcohol concentration or the presence of drugs pursuant to Chapters 20.1–13.1; 20.1–15; 39–06.2; 39–20, or 39–24.1 of the North Dakota Century Code. I am a public officer without a seal."

This record includes exhibits 9 and 15. Exhibit 9 provides that Smith is certified to conduct blood alcohol analysis. Exhibit 15 contains a notarized memorandum signed by the director of the State Crime Laboratory, a Division of the Office of the North Dakota Attorney General, stating

Smith has been appointed and authorized to sign and certify records as a designee of the State Crime Laboratory director. This memo includes the state seal and letterhead for the Office of Attorney General.

[¶ 16] Section 39–20–07(8), N.D.C.C., provides that a certified copy of the analytical report of a blood analysis issued by the state crime laboratory director's designee "must be accepted as prima facie evidence." On the basis of this record, the analytical report containing Jangula's chemical test result was certified by the director's designee and therefore complied with the statutory requirements of N.D.C.C. § 39–20–07. This is consistent with our holding in *Painte*, 2013 ND 95, ¶¶ 24–25, 832 N.W.2d 319, in which this Court held the hearing officer had not erred in admitting the laboratory results into evidence because the forensic scientist's affidavit, stating she was a designee of the director, constituted the certification required under N.D.C.C. § 39–20–07(5). Similarly, because the analytical report in this case was also properly certified and complied with N.D.C.C. § 39–20–07, the hearing officer did not abuse her discretion in admitting the report into evidence at the hearing.

[¶ 17] To the extent Jangula suggests the analytical report was not self-authenticating under N.D.R.Ev. 902, we note N.D.R.Ev. 902(10) states: "The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: ... A signature, document, or anything else that a statute declares to be presumptively or prima facie genuine or authentic." Because the analytical report was certified and complied with N.D.C.C. § 39–20–07, the report is self-authenticating under N.D.R.Ev. 902(10) and did not require other evidence of authenticity. We further note that N.D.C.C. § 39–20–07 creates, and N.D.R.Ev. 902(10) acknowledges, a presumption as to the authenticity of the analytical report. Jangula has failed to present any evidence challenging that presumption. *See Painte*, 2013 ND 95, ¶ 25, 832 N.W.2d 319.

IV

[¶ 18] The district court judgment is affirmed.

[¶ 19] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.