Crothers, Justice.
[¶1] The Department of Transportation appeals from a district court judgment reversing a Department decision suspending Juan Facio's driving privileges for 365 days. We affirm, concluding the district court did not err in finding reasonable and articulable suspicion did not support the stop of Facio's vehicle.
I
[¶2] In April 2018 a Ramsey County deputy sheriff stopped a vehicle driven by Facio and subsequently arrested him for driving under the influence of intoxicating liquor. In May 2018 a hearing officer held an administrative hearing on the Department's proposed suspension of his driving privileges. The hearing officer subsequently suspended Facio's driving privileges for 365 days.
[¶3] In its decision, the hearing officer made factual findings about the deputy's stop of Facio's vehicle:
"Ramsey County Sheriff's Deputy Christon Dallas was dispatched from Devils Lake to Starkweather at around 11:40 p.m. on April 27, 2018, in response to an anonymous caller reporting individuals on top of the school, running around. There was a white Chevy pickup by the school. The pickup's grill was described and a license plate given. While Dallas was on his way, dispatch ran the plate and it came back to Mr. Facio. Dallas traveled the approximate 21 miles north on Highway 20 to reach Starkweather, arriving at around midnight. After he turned east in the direction of the school he met a pickup fitting the given description coming from the direction of the school. It had a Minnesota license *500 plate as reported. There was no other traffic in Starkweather at the time. As the pickup pulled up to the intersection with Highway 20, Dallas turned around on the pickup intending to stop it to follow up on the report. After the pickup made a proper turn to go southbound on Highway 20, at about 12:05 a.m. on April 28th, Dallas initiated a traffic stop and the pickup pulled over and stopped appropriately."
[¶4] The hearing officer found the deputy had a reasonable and articulable suspicion to stop Facio's vehicle after receiving the anonymous tip. The hearing officer concluded the anonymous tip was sufficiently corroborated by the deputy's observations, namely the vehicle's description and license plate, the pickup's location, and the pickup's direction as coming from the area of the school. Facio requested review of the hearing officer's decision in the district court.
[¶5] The district court reversed the hearing officer's decision, concluding reasonable and articulable suspicion did not exist for the deputy to stop the vehicle solely based on the anonymous tip. The Department timely appeals.
II
[¶6] This Court's review of the Department's decision to suspend a person's driving privileges is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. Jangula v. N.D. Dep't of Transp. , 2016 ND 116, ¶ 5, 881 N.W.2d 639. This Court reviews the decision under N.D.C.C. § 28-32-49 in the same manner as the district court under N.D.C.C. § 28-32-46. Jangula , at ¶ 5. Under N.D.C.C. § 28-32-46(2), this Court will reverse the decision if it "is in violation of the constitutional rights of the appellant."
[¶7] "In deciding whether an agency's findings of fact are supported by a preponderance of the evidence, [this Court's] review is confined to the record before the agency and to determining whether a reasoning mind reasonably could have determined the factual conclusions were proven by the weight of the evidence." Jangula , 2016 ND 116, ¶ 6, 881 N.W.2d 639 (quoting Painte v. Dir., Dep't of Transp. , 2013 ND 95, ¶ 7, 832 N.W.2d 319 ). This Court does not make independent findings of fact or substitute its own judgment for that of the agency. Id. Questions of law are fully reviewable on appeal. Id.
III
[¶8] The Department argues the deputy's investigative stop of Facio to "freeze" the situation was lawful based on the deputy's particularized and objective basis for suspecting Facio of criminal activity.
[¶9] "An officer conducting an investigatory traffic stop must have a reasonable and articulable suspicion the motorist has violated or is violating the law." State v. Knox , 2016 ND 15, ¶ 7, 873 N.W.2d 664. "An officer has reasonable suspicion if, under the totality of the circumstances, a reasonable person in the officer's position would be justified by some objective manifestation to believe that the person stopped engaged in or was about to engage in criminal activity." Id. Whether the facts support a reasonable suspicion is a question of law, fully reviewable on appeal. City of Dickinson v. Hewson , 2011 ND 187, ¶ 6, 803 N.W.2d 814.
[¶10] In cases involving a "limited" investigative stop near a recent crime scene, this Court has held police may temporarily "freeze" a situation when corroboration of a tip by observing the illegality may not be practical. See State v. Parizek , 2004 ND 78, ¶ 10, 678 N.W.2d 154 ; City of Devils Lake v. Lawrence , 2002 ND 31, ¶ 11, 639 N.W.2d 466 ;
*501 City of Fargo v. Ovind , 1998 ND 69, ¶¶ 12-13, 575 N.W.2d 901 ; but see State v. Smith , 2005 ND 21, ¶ 23, 691 N.W.2d 203 (holding officer was not justified to "freeze" the situation where the defendant was stopped several miles away from the reported activity). While not condoning a "dragnet" approach, six nonexclusive factors ("LaFave factors") are provided for a court to consider in deciding whether facts and circumstances establish a "reasonable possibility" that a person may be involved in unlawful activity to justify a stop:
"(1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation."
Ovind , at ¶ 13 (quoting 4 W. LaFave, Search and Seizure § 9.4(g) (3d ed. 1996)).
[¶11] The Department relies on our decision in Lawrence , 2002 ND 31, 639 N.W.2d 466, arguing that under the "LaFave factors" it was reasonable for the deputy to make a limited investigative stop of Facio to "freeze" the situation and maintain the status quo without violating the Fourth Amendment. In Lawrence , at ¶ 16, we stated:
"In 4 W. LaFave, Search and Seizure § 9.4(g) n. 262 (1996), the author addresses the situation when police officers respond to a call for help and then see one or more persons leaving the area:
[T]hough it may not be more probable than not that a crime has occurred in such a situation, given the possibility that the call is a prank or is unrelated to criminal activity, it should be permissible to stop those fleeing the area while more specific information is obtained. Bell v. United States , 280 F.2d 717 (D.C. Cir. 1960). This is so 'even though it again was perfectly possible that no one present was guilty of wrong doing, and certain that not all of the persons were guilty of the commission of a crime.' United States v. Bonanno , 180 F.Supp. 71 (S.D.N.Y. 1960).
Given the probability of a disorderly conduct violation occurring at the bar and the identification of the alleged perpetrators by a possible victim, the officers in this case had as much, if not more, justification for the investigative stop than was present in Ovind [, 1998 ND 69, 575 N.W.2d 901 (concluding an officer was justified to conduct a limited investigative stop of defendant to 'freeze' the situation at the scene of a reported fight) ]."
[¶12] The Department asserts a caller reported individuals running around on top of the Starkweather School and provided law enforcement a detailed vehicle description thought to belong to the individuals observed on the school. The caller refused to identify himself. The report included the vehicle's make, color, front grill description, and license plate number. The Department asserts the deputy arrived in Starkweather about 25 minutes after receiving the report and observed a vehicle matching the description within 5 to 8 blocks of the school, leaving Starkweather. The deputy observed no legal violations before stopping Facio's vehicle. The deputy observed no other moving vehicles in the area, other than one vehicle seen while he was administering field sobriety tests. The Department contends the deputy had *502 a particularized and objective basis for suspecting Facio of criminal activity.
[¶13] Facio responds that the hearing officer's decision violated his constitutional rights because the arresting officer lacked a reasonable and articulable suspicion he was violating the law before stopping his vehicle. He relies on our decisions in State v. Miller , 510 N.W.2d 638, 639, 644-45 (N.D. 1994) (holding anonymous tip of a possible drunk driver in a pickup truck who "could barely hold his head up" in a fast-food restaurant's drive-up lane did not provide police officer with reasonable and articulable suspicion), and State v. Torkelsen , 2006 ND 152, ¶¶ 4, 14-17, 718 N.W.2d 22 (holding vehicle stop was invalid after identified-citizen report that defendant was "swerving all over the road" because officers did not observe erratic driving and lacked reasonable and articulable suspicion defendant engaged in criminal activity).
[¶14] Facio argues the anonymous tip in this case was insufficient and "freezing" the scene was not justified. He asserts the anonymous tip is lacking reliability, quantity, quality and basis of knowledge and no information suggests the caller was honest or reliable. He contends the caller's refusal to provide a name indicates the opposite of reliability, and the vehicle's make, model, and license plate number are merely innocent facts. He argues the anonymous caller's assertion the vehicle was in the vicinity of a potential crime, without providing the basis of the caller's knowledge, is not of sufficient quality or quantity to provide reasonable and articulable suspicion to justify the stop.
[¶15] "[P]olice officers may 'freeze' a situation and conduct a limited investigative stop of persons present at the scene of a recently committed crime without violating the Fourth Amendment." State v. Parizek , 2004 ND 78, ¶ 10, 678 N.W.2d 154 (citing Lawrence , 2002 ND 31, ¶¶ 10-17, 639 N.W.2d 466 ; City of Fargo v. Ovind , 1998 ND 69, ¶¶ 12-13, 575 N.W.2d 901 ). In Ovind , at ¶ 17, we upheld an investigative stop of a vehicle backing out of a parking spot in a restaurant parking lot by an officer responding to an early morning dispatch reporting a fight at the restaurant. In Lawrence , at ¶ 12, we upheld an investigative stop of a vehicle leaving the parking lot of a bar by an officer responding to a dispatch that a fight was going to begin at the bar. Both Ovind and Lawrence involved temporary stops close in time of the report, and close in proximity to the reported crime scene.
[¶16] As explained in Smith , 2005 ND 21, ¶ 23, 691 N.W.2d 203, "[a] police officer may not freeze an illimitable area to conduct his search." In Smith , this Court rejected a "freeze" where the stop occurred several miles away from the reported activity. Similarly here, the stop occurred 25 minutes after the anonymous report of a potential trespass, the stop occurred 5 to 8 blocks away from the scene, and the deputy was unable to corroborate anything other than the readily observable vehicle description and license plate. We therefore reject the Department's argument the deputy lawfully froze the crime scene pending further investigation.
[¶17] We consider whether the deputy had a reasonable and articulable suspicion to stop Facio's vehicle in light of the Supreme Court's decision in Navarette v. California , 572 U.S. 393, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014). We discussed Navarette in Knox , 2016 ND 15, ¶ 12, 873 N.W.2d 664 :
"In Navarette [, 134 S. Ct. at 1690-91 ], the Supreme Court held information from a 911 caller was sufficiently reliable to provide the police with reasonable suspicion to justify an investigatory *503 stop of a vehicle matching the caller's description. The officer did not observe any additional suspicious conduct before stopping the vehicle, but the Court held the information from the 911 call bore adequate indicia of reliability because the caller claimed an eyewitness basis of knowledge. Id. at 1689. The timeline of events indicated the caller reported the incident soon after it occurred, and the caller used the 911 system which provided safeguards against callers making false reports. Id. at 1689-90."
[¶18] Whatever direction the Navarette decision might take reasonable suspicion analysis in the driving under the influence cases, the decision was expressly limited to ongoing crimes such as driving under the influence. The Navarette majority identified the issues as "whether the 911 caller's report of being run off the roadway created reasonable suspicion of an ongoing crime such as drunk driving as opposed to an isolated episode of past recklessness." 134 S.Ct. at 1690. The majority also noted, "Because we conclude that the 911 call created reasonable suspicion of an ongoing crime, we need not address under what circumstances a stop is justified by the need to investigate completed criminal activity." Navarette , 134 S.Ct. at 1690 n.2. The Navarette dissent agreed the case only decided reasonable suspicion in the context of an ongoing crime. Id. at 1695 ("Bear in mind that that is the only basis for the stop that has been asserted in this litigation. The stop required suspicion of an ongoing crime, not merely suspicion of having run someone off the road earlier. And driving while being a careless or reckless person, unlike driving while being a drunk person, is not an ongoing crime.").
[¶19] Here, Facio was not sought for commission of an ongoing crime. The anonymous tip was that someone was on the roof of the school, which would be a trespass. See N.D.C.C. § 12.1-22-03. When Facio was seized, it was 25 minutes after the dispatch and he was blocks away from the school so the alleged trespass was not ongoing; rather, it was a single incident of a crime which may be punishable as a misdemeanor. See N.D.C.C. § 12.1-22-03(2). As such, the officer was not authorized to make a warrantless arrest, even presuming a lawful stop. N.D.C.C. § 29-06-15. More to the point in this case, because the stop was not for an ongoing crime, the lesser reasonable articulable suspicion standard from Navarette does not apply, and we instead must look to our traditional analysis for tip reliability. See State v. Rodriguez , 288 Neb. 878, 852 N.W.2d 705, 714 (2014) ("Even though the [ Navarette ] majority and the dissent disagreed on whether the report of driving another vehicle off the road indicated ongoing drunk driving, the majority and the dissent agreed that the officer needed reasonable suspicion of an ongoing crime to justify an investigatory stop."); State v. Z.U.E. , 183 Wash.2d 610, ¶ 38, 352 P.3d 796 (2015) ("Notably, the Navarette Court was careful to limit its holding on the 911 call to ongoing crimes.").
[¶20] The law of reasonable suspicion is well established:
"Under the 'articulable and reasonable suspicion' standard, the 'articulable aspect requires that the stop be justified with more than just a vague "hunch" or other non-objective facts; and the reasonable aspect means that the articulable facts must produce, by reasonable inference, a reasonable suspicion of unlawful conduct.' State v. VandeHoven , 388 N.W.2d 857, 858 n. 1 (N.D. 1986) [Emphasis in original]. The standard is an objective one, and we take into account inferences and deductions that an investigating officer would make that may elude a layperson.
*504 State v. Thordarson , 440 N.W.2d 510 (N.D. 1989) ; State v. VandeHoven, supra . The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity. State v. Indvik, 382 N.W.2d 623 (N.D. 1986)."
State v. Smith , 452 N.W.2d 86, 87-88 (N.D. 1990).
[¶21] Here, the deputy observed no improper or illegal driving or conduct. Therefore, Facio's stop must rise or fall on the tip provided by the unidentified caller. That information included only the vehicle's make, color, front grill description, and license plate number. This was sufficient information for the officer to ensure he was stopping the correct vehicle. But the tip provided no information about whether Facio "was, or was about to be, engaged in unlawful activity." Smith, 452 N.W.2d at 87. In that regard, the tip only stated "someone" was on the school and Facio's vehicle was located near the school. That information was insufficient to stop Facio's vehicle.
IV
[¶22] The district court judgment is affirmed.
[¶23] Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Lisa Fair McEvers
Gerald W. VandeWalle, C.J.