THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL KINCY, Defendant-Appellant.

Second District    No. 80-547

Opinion filed May 10, 1982.

Frank Wesolowski, Jr., Public Defender, of Wheaton, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE VAN DEUSEN delivered the opinion of the court:

The defendant, Michael Kincy, appeals from a jury verdict which found him guilty of attempt (murder), aggravated battery and armed violence, and from the resultant sentence of 45 years imprisonment.

On October 21, 1979, Filberto Sanchez was involved in a minor traffic accident with a vehicle driven by Louis Owens. The defendant, Kincy, was a passenger in the Owens' vehicle. Owens, Kincy, Sanchez and two other passengers in the Owens' vehicle, Linda Shelton and Burt Owens, decided to have a few drinks together. Eventually, the group arrived at Mickey's Lounge in Cicero, Illinois. As they were leaving the lounge, Sanchez was robbed at gunpoint. At trial, Sanchez identified the defendant as one of his assailants.

After the robbery, the assailants forced Sanchez into his own automobile and took him for a 40-minute ride into Du Page County. During the ride, Kincy held a gun on Sanchez. After the group arrived at a field in Du Page County, Sanchez was ordered to take off his clothes. While he was doing so, he was hit over the head with the butt of a pistol and rendered unconscious. Sanchez was then repeatedly stabbed and slashed in the abdominal area. Later, in the early hours of the next morning, Sanchez regained consciousness. He was alone, naked, severely injured and without his automobile.

On that same day, October 22, 1979, Kincy and Linda Shelton were arrested as a result of an unrelated incident. During a search of Kincy conducted after his arrest, police officers found a wallet and identification belonging to Sanchez on Kincy's person.

As a result of the Du Page County attack on Sanchez, Kincy was charged with attempt to commit murder (Ill. Rev. Stat. 1979, ch. 38, par.

8—4), two counts of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, pars. 12—4(a) and 12—4(b)(1)), and two counts of armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2).

Kincy filed a pretrial motion to suppress evidence obtained as a result of his arrest. In his motion, Kincy alleged that certain evidence, including the wallet and identification belonging to Sanchez, was suppressible as fruit of an illegal arrest. The motion was denied. After a jury trial, the defendant was found guilty of the charged offenses. The defendant received a 45-year sentence on the armed violence charge.

We first consider defendant's contention that the arrest was not based on probable cause, and, therefore, the trial court erred in denying his motion to suppress. At the hearing on the motion to suppress, Officer Robert Wagge of the Cicero Police Department testified to the following. On October 22, 1979, he received a report of a disturbance involving a man with a gun. When he arrived at the scene of the disturbance, he met Ken Shelton who told the officer that he had been threatened by a white male named "Mike," and that Mike, who was wearing blue jeans and a Levi coat, was with Shelton's wife, Linda. He reported that Mike had held a gun to his head and threatened to shoot him. He stated that his wife and Mike had headed north on 50th Street. The officer headed north and observed Shelton's wife, at the back door of a house at 1217 50th Street, Cicero, two blocks north of the assault. Later, when the officer observed Linda Shelton in the alley at the rear of the house, she was arrested and was returned to the scene of the disturbance. She then told the officer that the gun could be found between two boxes near the garage at 1217 50th Street.

Wagge returned to the 50th Street address. He walked toward the boxes in the backyard. As the officer was looking for the gun, the defendant, a white male wearing blue jeans and a Levi jacket, approached him. The defendant asked the officer what he was doing. The officer told the defendant he was looking for a gun. The officer learned that the defendant's name was Mike. The officer then observed that the defendant was wearing a sheathed hunting knife. Because of the hunting knife, Wagge arrested the defendant for unlawful use of weapons and so advised him. The officer then returned with the defendant to the scene of the disturbance. There Ken Shelton identified the defendant as his assailant. The defendant was transported to the Cicero police station and charged with the unlawful use of a weapon and aggravated assault. At that time, the defendant was searched. The wallet and identification belonging to Filberto Sanchez, the victim in the instant case, were found on the defendant.

The defendant contends that Officer Wagge did not have probable cause to arrest him and, therefore, the trial court erred in denying his

motion to suppress the gun, the hunting knife, the wallet and identification of Sanchez, and a 68-page transcript of a confession made by the defendant.

■■■ The defendant's initial assertion is that his arrest for unlawful use of weapons was illegal in that possession of a hunting knife is not a violation of the law. The record does reflect that Officer Wagge advised the defendant that he was under arrest for unlawful use of a weapon. The defendant is also correct that mere possession of a hunting knife is not a crime; however, under section 24—1(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(2)) knowingly carrying or possessing a dangerous weapon with intent to use the same unlawfully against another constitutes the offense of unlawful use of weapons. Here, the arresting officer was aware that a short time earlier and only a few blocks away, a man, having the same first name and fitting the same general description as the defendant, aimed a gun at a man's head and threatened to kill him. Under the totality of the circumstances in this case, the officer could have reasonably believed that the defendant possessed the hunting knife with the intent to use the same illegally against another, perhaps the officer himself. Therefore, it can be said that the officer did have probable cause to arrest the defendant for unlawful use of weapons.

Moreover, there are other grounds for upholding the denial of the motion to suppress. After hearing Officer Wagge's testimony, the trial court determined that there was probable cause to arrest the defendant for aggravated assault and that the officer's charge of unlawful use of weapons, even if improper, was not determinative of the validity of the arrest.

■■■ The test for determining the validity of the arrest is whether the officer had actual probable cause to arrest the defendant, not whether the officer articulated the correct basis for the arrest. (*United States v. Lester* (8th Cir. 1981), 647 F.2d 869, 873; *United States v. Dunavan* (6th Cir. 1973), 485 F.2d 201, 205; *United States v. Saunders* (5th Cir. 1973), 476 F.2d 5, 7; *United States v. Carr* (D. Conn. 1978), 445 F. Supp. 1383, 1387, *aff'd* (2d Cir. 1978), 584 F.2d 612, *cert. denied* (1979), 440 U.S. 935, 59 L. Ed. 2d 494, 99 S. Ct. 1280.) We agree that when an officer makes an arrest which is properly supported by probable cause to arrest for a certain offense neither his subjective reliance on an offense for which there is no probable cause, nor his verbal announcement of the wrong offense vitiates the arrest. (*United States v. Saunders* (5th Cir. 1973), 476 F.2d 5, 7; see also *People v. Moody* (1981), 97 Ill. App. 3d 758, 766.) Therefore, if there was actual probable cause to arrest the defendant for aggravated assault, the arrest was valid regardless of the officer's stated basis for the arrest.

The defendant contends, however, that the trial court erred, in that

insufficient facts were known to the officer to support a finding of probable cause to arrest the defendant for aggravated assault. The defendant asserts that probable cause could not be based merely on the defendant's fitting the very general description given by Shelton. The defendant cites *In re Woods* (1974), 20 Ill. App. 3d 641, to support this contention.

■■ ■ In *Woods*, the court stated that an offender's general description alone is insufficient to provide the probable cause necessary to justify an arrest. For a valid arrest, the general description must be supported by other relative facts and circumstances known to the arresting officer. (20 Ill. App. 3d 641, 646; see also *People v. Ward* (1979), 73 Ill. App. 3d 1001; *People v. Henry* (1977), 48 Ill. App. 3d 606.) The other relative facts and circumstances must be more than the fact that the person who fits the general description was in the vicinity of the crime shortly after the crime occurred. (*In re Woods* (1974), 20 Ill. App. 3d 641, 646.) Here, the defendant was found at the same spot where the female suspect stated that she had disposed of the gun. The defendant not only fit the general description, but also had the same first name. These additional facts and circumstances were sufficient to give the officer probable cause to justify the arrest for aggravated assault.

Probable cause to arrest was recently discussed by the Illinois Supreme Court in *People v. Lippert* (1982), 89 Ill. 2d 171. There the court noted that:

> "Probable cause for arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. [Citations.] Although a 'mere suspicion' that the person arrested has committed the offense is an insufficient basis for arrest [citations], evidence sufficient to convict is not required [citations]." 89 Ill. 2d 171, 178-79.

In *Lippert*, a couple had been the victims of an armed robbery. One of the four armed robbers was described as being about 5 feet 11 inches tall with medium-length blond hair and another was described as having bushy, brown hair and wearing a blue jacket. In the vicinity of the robbery, an officer stopped a car for a possible traffic violation. Once he approached the stopped vehicle, he noted that the two occupants fit the description of two of the robbers. The two occupants were arrested and taken a short distance to be identified by the victims. The *Lippert* court held that the officer had probable cause to arrest the defendants. Under *Lippert*, Officer Wagge had probable cause to arrest the defendant for aggravated assault.

■■ Finally, even if there was not probable cause to arrest the defendant for unlawful use of weapons or for aggravated assault, under the cir-

cumstances of this case, the seizure of the defendant and the subsequent transporting him two blocks for a showup was a reasonable seizure which did not violate his Federal fourth amendment rights. In *Michigan v. Summers* (1981), 452 U.S. 692, 697-98, 69 L. Ed. 2d 340, 346, 101 S. Ct. 2587, 2591, the court stated "that some seizures significantly less intrusive than an arrest have withstood scrutiny under the reasonableness standard embodied in the Fourth Amendment." While the general rule is that every arrest, and every seizure having the essential attributes of a formal arrest is unreasonable unless supported by probable cause, the *Summers* court recognized that there are exceptions to this general rule, and in determining whether an exception exists it is necessary to examine both the character of the official intrusion and its justification. 452 U.S. 692, 700, 69 L. Ed. 2d 340, 348, 101 S. Ct. 2587, 2593.

In *People v. Lippert* (1982), 89 Ill. 2d 171, 185, the Illinois Supreme Court, citing *Summers*, held that when an officer knows that a crime has been recently committed in the vicinity, the transporting of a suspect a short distance for an immediate showup does not violate the fourth amendment, even absent knowledge of sufficient facts to establish a finding of probable cause to make an arrest. In so holding, the *Lippert* court noted that arrests serve, not only the function of producing persons for prosecution, but also serve an investigative function. 89 Ill. 2d 171, 179.

■■ In the present case, the defendant, who answered to the same name and fit the same general description of the assailant, was transported only a short distance for an immediate showup. There he was identified as the assailant of Ken Shelton. Under *Lippert*, the defendant's fourth amendment rights were not violated by this procedure, and it cannot be denied that once the defendant was identified as the assailant of Ken Shelton, there were valid grounds for arresting him.

■■ The standard of review of an order denying a motion to suppress is whether the trial court's disposition was manifestly erroneous. (*People v. Nash* (1979), 78 Ill. App. 3d 172, 178.) Under *United States v. Lester* (8th Cir. 1981), 647 F.2d 869, and the recent Illinois Supreme Court decision of *People v. Lippert* (1982), 89 Ill. 2d 171, the trial court's disposition of the motion to suppress is not manifestly erroneous and, therefore, we affirm it.

Defendant also contends that the trial court erred in allowing the jury to hear evidence of other crimes when their probative value was outweighed by their prejudicial effect. The evidence of these other crimes concerned primarily the series of events which occurred in Cook County earlier in the evening, just prior to the stabbing of Sanchez in Du Page County. The testimony which the defendant contends was erroneously admitted revealed that a minor traffic accident had occurred involving the defendant's vehicle and a vehicle driven by Sanchez; that Sanchez and

the occupants of the other vehicle went into a bar for several drinks; that several of the occupants of the other vehicle, including the defendant, held a gun on Sanchez while taking his wallet, then forced Sanchez into his own vehicle and drove him out of Cook County into Du Page County; and that subsequently the Sanchez vehicle was repainted and then transported to another State.

A review of the trial testimony which the defendant claims was erroneously admitted reveals that during the trial the defendant failed to object to any of the testimony concerning other crimes. Moreover, the defendant made no motion to strike the testimony, nor did he raise these alleged errors in his motion for a new trial. Thus, the defendant has waived his right to raise these issues on review. (*People v. Price* (1979), 76 Ill. App. 3d 613, 633; see also *People v. Trefonas* (1956), 9 Ill. 2d 92, 99; *People v. Owens* (1981), 99 Ill. App. 3d 730, 738.) The defendant nonetheless contends that this court should review the issues as plain error under Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)).

Our review of the record does not disclose that any error was committed, much less plain error. The evidence of other offenses was admissible to show motive, intent or *res gestae. People v. Owens* (1981), 99 Ill. App. 3d 730, 738.

The case cited by defendant, *People v. Olson* (1981), 96 Ill. App. 3d 193, is distinguishable. There the trial court admitted extensive evidence concerning an unrelated burglary which happened on the same date as the charged offense, but earlier in the morning. The only connections between the early morning burglary and the charged offense, which involved the fleeing from and shooting at a police officer, were that the earlier offense showed a motive for the latter offense and that the weapon used in the charged offense had been stolen in the earlier offense. On appeal, this court held that while some evidence of the earlier offense was admissible, the graphic, inflammatory details presented at the trial outweighed the probative value of the evidence admitted.

Here, the evidence admitted at trial was not graphic, nor did it involve inflammatory details. It was a simple relating of the events which occurred earlier in the evening and which led to the charged offenses. Here, unlike *Olson*, the probative value of the evidence outweighs any prejudicial effect.

The defendant also contends that the trial court erred in admitting two knives into evidence. One was a hunting knife owned by Burt Owens, one of Kincy's co-defendants, and the other was the hunting knife taken from the defendant at the time of his arrest. The defendant contends that the admission of these knives was error in that no foundation was laid to show their relevance. At the trial stage, the defendant failed to object to the admission of the knives; nonetheless, the defendant urges that the

alleged error should be considered "plain error" under Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)).

The defendant claims that because there was an insufficient connection made between the defendant's hunting knife and the stab wounds, it was error to admit defendant's knife. Such a definitive connection is not needed. In *People v. Upshire* (1978), 62 Ill. App. 3d 248, the defendant was arrested for armed robbery. At the time of the arrest, a gun was recovered from his person, and a sword and a loaded shot gun were recovered from the trunk of his automobile. On appeal, the court held that even though the sword and the shot gun had not been used in the commission of the crime, they were admissible as a detail of the arrest. (See also *People v. Longstreet* (1974), 23 Ill. App. 3d 874.) In this case the hunting knife is admissible as a detail of the arrest.

Moreover, there was testimony to indicate that Sanchez was stabbed and cut numerous times with a sharp instrument. The testimony indicated that a knife similar in size to defendant's knife would be suitable for inflicting the injuries received by Sanchez. In *People v. Moore* (1969), 42 Ill. 2d 73, 78, *rev'd on other grounds* (1972), 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562, the court stated that:

> "We have consistently held that a weapon found upon a defendant suitable for the commission of the crime charged is proper evidence even though there is no showing that it was the actual weapon used."

Thus, the weapon was admissible either as a detail of the arrest or as a weapon owned by the defendant and suitable for commission of the crime.

It does appear, however, that the knife owned by Owens was not connected to the defendant, and its admission was error. The defendant, however, has waived such error by not objecting to its admission at trial; moreover, the admission of the knife is not reviewable under the plain-error rule. The plain-error rule is to be applied only when the error of the trial court is so prejudicial that real justice has been denied or the verdict of the jury may have resulted from such error. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577.) The alleged errors must be so great that the jurors were influenced or prejudiced to the extent that they could not be fair or impartial. *People v. Carlson* (1980), 79 Ill. 2d 564, 578.

At the trial, the defendant testified that after he, Burt Owens, Louis Owens and others had taken Sanchez out into the Du Page County field, Louis and Burt Owens took Sanchez into some bushes and stabbed him. The admission of Burt Owens' knife would tend to corroborate the defendant's story. Because the admission of Burt Owens' knife does not negate the defendant's testimony, it could not be so great an error as to

have prejudiced or influenced the jury. Thus, it cannot be considered as plain error. *People v. Carlson* (1980), 79 Ill. 2d 564, 578.

The defendant was convicted of armed violence, attempt (murder), and aggravated assault. At the sentencing hearing, the trial court vacated the convictions for aggravated assault and attempt. The court noted that armed violence is a Class X felony with a sentence range of 6 to 30 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(3).) The trial court then determined that due to the exceptional brutality and heinous nature of the stabbing, under section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2)), the defendant was eligible for an extended term of 30 to 60 years. Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2(a)(2).

The trial court then weighed the factors in mitigation (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.1) against the factors in aggravation (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2), and imposed a 45-year sentence. Defendant contends on appeal that his sentence was excessive.

■■ The standard of review of a sentence claimed to be excessive is whether in fact the trial court exercised its discretion and if so, whether this discretion was abused. *People v. Cox* (1980), 82 Ill. 2d 268, 275; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.

■■ Here, the primary factors in mitigation concerned the defendant's poor physical health and the fact that the defendant's conduct was facilitated by others. The trial court considered these factors along with the factors in aggravation such as the brutal and heinous nature of the stabbing. The court also considered the presentence report which indicated that at the age of 27, the defendant had failed to complete more than 3 years of school, was unable to hold a job and had an explosive, volatile personality. It does not appear to us that the trial court erred in determining that a term of 45 years imprisonment was necessary for the protection of society.

The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.