THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL R. BARNES, Defendant-Appellant.

Fourth District    No. 4—90—0881

Opinion filed September 24, 1991.

STEIGMANN, J., dissenting.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Following a jury trial in the circuit court of Adams County defendant Michael Barnes was found guilty of aggravated battery under section 12—4(b)(8) of the Illinois Criminal Code of 1961

(Code) (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(8)), and was sentenced to a four-year term of imprisonment. Defendant appeals, contending reversible error was committed at trial when the prosecutor elicited testimony of (1) his post-arrest silence, and (2) his response to police questioning following his arrest and *Miranda* warnings. Defendant also claims the court erred by ordering him to pay an amount of restitution based exclusively on information in the presentence report, despite his objection that the amount was inaccurate. We reverse and remand for a new trial.

■ The dispositive issue here is whether the prosecutor elicited testimony at trial that defendant remained silent after his arrest and after he had been given the *Miranda* warnings in violation of the holding in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. In *Doyle,* the United States Supreme Court held that due process precludes the State from using a defendant's post-arrest silence following the *Miranda* warnings to impeach his exculpatory story told for the first time at trial. The Supreme Court reasoned that post-arrest silence after a defendant receives the *Miranda* warnings is "insolubly ambiguous" because that defendant's failure to speak may be nothing more than an exercise of his *Miranda* rights. *Doyle,* 426 U.S. at 617, 49 L. Ed. 2d at 97, 96 S. Ct. at 2244.

■ Initially, the State claims defendant has waived any claim of error because defense counsel failed to object at trial and in a post-trial motion to the testimony of which he now complains. Ordinarily, if the defense fails to make a timely objection at trial and in a post-trial motion, any claim of error is waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) However, Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) provides an exception if there has been plain error. The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. *People v. Pickett* (1973), 54 Ill. 2d 280, 282-83, 296 N.E.2d 856, 858.

In *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272, the Illinois Supreme Court held that, there, even though that defense counsel failed to timely object at trial and in a post-trial motion, fundamental fairness required review of that defendant's allegation that the prosecutor elicited evidence of his post-arrest silence to impeach him at trial. That court concluded that despite the existence of what would otherwise be plain error, the error was harmless be-

yond a reasonable doubt because of the overwhelming proof of the guilt of the accused. Here, because the evidence at trial was closely balanced and defendant's credibility was crucial, we will review defendant's contention of error under the doctrine of plain error.

The offense charged against defendant arose when he and the complainant, Terry Jones, engaged in a fistfight outside a tavern in a city parking lot. The primary factual issue at trial was whether defendant initiated the fight, or was acting in self-defense when he struck the complainant. The complainant testified at trial that as he was standing outside a tavern in a city parking lot he observed defendant driving in a "hot-rodding" manner and he yelled to defendant, "Go for it." In response, defendant yelled, "your mama." Defendant then parked his car in the city parking lot and he and a companion approached complainant and they exchanged more angry words. Complainant testified that defendant struck him unexpectedly, knocking him to the ground. A subsequent struggle ensued and complainant wrote down defendant's license-plate number and contacted the police.

Paul Holtschlag witnessed part of the incident and testified that when he first arrived at the scene he observed complainant on the ground and defendant standing close to him. He then tried to intervene, and defendant struck him, knocking him to the ground. Holtschlag testified he never saw which party initiated the fight. In addition, Cathy Martin, a Quincy police officer, testified that on the evening of the incident complainant came to the Quincy police headquarters appearing as if he had been in a fight, reported being hit by another person, and "gave her information" concerning a license-plate number. She then checked the computer records of the Secretary of State and discovered the license plate belonged to a car registered to defendant. Martin also testified that the place where the fight was alleged to have taken place was public property, establishing the aggravating factor under section 12—4(b)(8) of the Code.

For the defense, Kenneth Gilker, defendant's companion on the night of the incident, testified that just prior to the incident defendant pulled his car into the city parking lot because of car trouble when complainant then yelled something to them. Gilker and defendant proceeded to walk through the parking lot and complainant mumbled something like "Your mama" to defendant, who had asked, "What's up?" After complainant repeated the remark, defendant walked toward him and asked, "What did you say?" and

complainant struck defendant. Gilker testified defendant struck complainant back and knocked him to the ground.

Defendant testified to the same events as Gilker, and essentially claimed he struck complainant in self-defense. On cross-examination, the following colloquy took place between the prosecutor and defendant:

"Q. [Prosecutor:] Mr. Barnes, what time was it when you called the police department about this battery that you were the victim of?

A. [Defendant:] I'm sorry?

Q. What time was it when you called the police department about being hit in the parking lot by Mr. Jones?

A. I didn't call no law. That's useless that's—."

Defendant contends this portion of his cross-examination was an improper use of his post-arrest silence. However, the questions involved refer to defendant's failure to report to the police, before his later arrest, that he had been attacked and acted in self-defense, as he claimed at trial. The fact that he did not report such an attack was probative as to whether his trial testimony was accurate. *Jenkins v. Anderson* (1980), 447 U.S. 231, 240, 65 L. Ed. 2d 86, 96, 100 S. Ct. 2124, 2130.

Later, during the cross-examination of defendant, the following further colloquy occurred:

"Q. [Prosecutor:] Do you remember when you talked to Officer Cathy Martin about a week after the incident?

A. [Defendant:] Yes.

Q. And do you remember Officer Martin asking you if you remember being on the City Market parking lot on June 16 and being in a fight at that time?

A. I'm not familiar with our conversation. I refused to go into detail about my case with her because she was the arresting officer.

Q. Do you remember saying to her, 'I don't remember'?

A. No. I don't remember saying, 'I don't remember.'

Q. Did you say something otherwise to her when she talked to you?

A. I said I'm not going to talk to you, point-blank, you know.

And she said 'We have nothing to talk about.'

Q. But you didn't say anything to her about the statement, 'Your mama,' or anything like that that night, did you?

A. I didn't—. I didn't talk to the lady."

The line of questioning which ultimately resulted in a *Doyle* violation began with the foregoing. Then Officer Martin was called in rebuttal. The prosecutor's questions to her were apparently designed to respond to defendant's testimony on cross-examination when he stated that he could not remember whether he told Officer Martin, at the time of his arrest, that he did not remember whether he was in a fight in a city parking lot on the night in question. The questions she was asked and her answers were as follows:

"Q. [Prosecutor:] Did you advise the defendant of his rights, commonly called his *Miranda* rights, prior to talking to him?

A. [Officer Martin:] Yes, sir, I did.

Q. That's the right to remain silent ***?

A. Yes.

Q. Did you question the Defendant concerning the incident at the City Market parking lot that we've testified to here today already?

A. Yes, sir.

Q. And what was your first question to [defendant] regarding that incident?

A. I asked him if he remembered being involved in the fight on that day and time in the city parking lot.

Q. What was his first response to your question?

A. 'I do not remember, and I do not wish to talk about it.'

Q. After he made the statement that he didn't wish to talk about it, you acknowledged his right to remain silent, and you didn't question him any further?

A. No, sir, I did not."

■■ Thus, when the prosecutor cross-examined defendant in regard to a statement concerning his lack of remembrance about the fight, the prosecutor did so in the face of his own witness' statement that in the same breath he informed her he did not want to talk. The defendant maintains this, of itself, was enough to create plain error. We need not decide that because, with Officer Martin's testimony, the State put before the jury testimony that *Miranda* warnings were given defendant and he then stated he would not talk. Even if testimony that defendant had stated he could not remember the fight was properly presented, the testimony that he stated he would not talk was a direct *Doyle* violation requiring grant of a new trial.

We need not consider defendant's contentions concerning sentence. We reverse the conviction and sentence and remand for a new trial.

Reversed and remanded.

KNECHT, J., concurs.

JUSTICE STEIGMANN, dissenting:

While I agree that error occurred in this case, I do not agree that it constitutes plain error, requiring us to reverse even though defendant made no objection at trial. In my opinion, this case is not close to the key authority cited in the majority opinion for concluding that plain error occurred. The behavior of the prosecutor in the present case is not nearly as egregious as that of the prosecutor in *Green*. In addition, only part of the prosecutor's questioning was improper. Specifically, when the prosecutor asked the police officer what defendant first said to her regarding if he remembered being involved in the fight in question, she answered: " 'I do not remember, and I do not wish to talk about it.' " That she testified defendant said " 'I do not remember' " is clearly admissible; that she testified that defendant then also said " 'I do not wish to talk about it' " is not admissible and, if defendant had made a timely objection, that testimony should have been stricken and the jury instructed to disregard it.

Likewise, the prosecutor on cross-examination of defendant could properly ask him if he remembered saying to the police officer, "I don't remember [about the fight]." The other two questions the prosecutor asked were improper because they refer to statements that the defendant did *not* make after he indicated he did not want to speak further with the officer; still, the earlier statements were admissible.

The plain error rule should be applied only when the error is so prejudicial that real justice has been denied or the verdict of the jury may have resulted from such error. (See *People v. Kincy* (1982), 106 Ill. App. 3d 250, 258, 435 N.E.2d 831, 837.) The facts of the present case do not meet these standards, and I respectfully dissent.