# ILLINOIS OFFICIAL REPORTS

---

### *In re Marquita M.*, 2012 IL App (4th) 110011

---

| | |
|---|---|
| Appellate Court Caption | In re: Marquita M., a Minor, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. MARQUITA M., Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0011 |
| Filed | June 13, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The adjudication that respondent was a delinquent minor based on the commission of unlawful use of a weapon was upheld over her contentions that her counsel was ineffective in failing to move to suppress her inculpatory statement on the ground that she was not given *Miranda* warnings and that the State failed to prove her guilt beyond a reasonable doubt, since she was questioned in her school dean's office and no *Miranda* warnings were necessary, the totality of the circumstances indicated that her statements were voluntary, and there was no reasonable probability a motion to suppress would have been granted, and further, a rational trier of fact could have found respondent intended to use the knife unlawfully against another student based on respondent's statement that the student she planned to fight would probably get stabbed. |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 10-JD-46; the Hon. John C. Wooleyhan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Karen Munoz, and Catherine K. Hart, all of State Appellate Defender's Office, of Springfield, for appellant.

Jonathan H. Barnard, State's Attorney, of Quincy (Patrick Delfino, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.

Justices Steigmann and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1        In May 2010, the State filed a petition for adjudication of wardship, alleging respondent, Marquita M., was a delinquent minor following the commission of the offense of unlawful use of weapons. In November 2010, the trial court found the State proved its petition and adjudicated respondent delinquent. In December 2010, the court made respondent a ward of the court and placed her on probation.

¶ 2        On appeal, respondent argues (1) her trial counsel was ineffective and (2) the State failed to prove her guilty beyond a reasonable doubt. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In May 2010, the State filed a petition for adjudication of wardship, alleging respondent, born in August 1994, was a delinquent minor in that she committed the offense of unlawful use of weapons (720 ILCS 5/24-1(a)(2) (West 2010)). The petition alleged respondent knowingly possessed a steak knife with the intent to use it unlawfully against T.H.

¶ 5        In November 2010, the trial court conducted a hearing on the petition. Kimberly Dinkheller testified she served as the freshman dean of students at Quincy Junior High School at the time of the incident. In that position, she was in charge of all discipline and attendance for the freshman class. On April 6, 2010, at approximately 9:15 a.m., Dinkheller received information from a student regarding respondent and a potential threat to safety or the possibility of weapons in the school. She then contacted the police liaison officer. Dinkheller, along with Officer Matt Hermsmeier, made contact with respondent. They escorted her out of her classroom, "drawing no attention to why we were there." They then walked down to Dinkheller's office. Officer Hermsmeier proceeded to ask respondent about having a knife at school. Initially, respondent stated a knife might be in her locker, but she later said it was located in the pocket of her hooded sweatshirt. Respondent then pulled out

the knife and placed it on a desk. Dinkheller described it as a "steak knife," about eight inches in length with a four-inch blade.

¶ 6    Dinkheller testified a conversation took place as to why the knife was at school. Respondent stated she was having issues with another student, T.H., and they were supposed to fight that day. If the fight was to take place, respondent stated someone would get cut or stabbed. Respondent was suspended from school and escorted off the grounds.

¶ 7    On cross-examination, Dinkheller testified respondent initially stated she did not know what she was planning to do with the knife. It was only after being questioned as to whether T.H. was beating her up during the fight that respondent said T.H. would probably get cut.

¶ 8    Quincy police officer Matt Hermsmeier testified he was assigned as the junior high school's resource officer and handled school-related incidents. On April 6, 2010, he received information from Dinkheller regarding respondent. He and Dinkheller located respondent in her classroom and escorted her back to Dinkheller's office. Hermsmeier asked respondent if she had anything she should not have, and she denied having anything. She eventually admitted having a knife, stating first it was in her locker and then it was in her pocket. Upon Hermsmeier's request, respondent took out the steak knife and placed it on the desk. Respondent then stated she was planning to fight T.H. after school. When asked what she planned to do with the knife, respondent stated she did not know. When asked about a scenario of what would happen if the two got into a fight, respondent stated T.H. would probably get stabbed.

¶ 9    Following closing arguments, the trial court found the State proved the offense of unlawful use of weapons and adjudicated respondent delinquent. In December 2010, respondent filed a motion for judgment notwithstanding the verdict or for a new trial. The court denied the motion. Thereafter, the court made respondent a ward of the court and placed her on probation for one year. The court also ordered her to serve 30 days' detention with the time stayed so long as she did not violate her terms of probation. This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11                         A. Assistance of Counsel

¶ 12    Respondent argues trial counsel was ineffective for failing to file a motion to suppress her inculpatory statement because it was the result of custodial interrogation without the benefit of the *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436 (1966). We disagree.

¶ 13    Claims of ineffective assistance of counsel are analyzed under the standard articulated by *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard also applies to counsel's performance in juvenile delinquency proceedings. *In re Austin M.*, 403 Ill. App. 3d 667, 680, 941 N.E.2d 903, 914 (2010).

¶ 14    To set forth an ineffective-assistance-of-counsel claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To

establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 687). Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Evans*, 209 Ill. 2d at 219-20, 808 N.E.2d at 953 (citing *Strickland*, 466 U.S. at 694). To show counsel was ineffective for not filing a motion to suppress statements, "the defendant must show that there was a reasonable probability that the motion would have been granted and that the outcome of the trial would have been different if the *** statements [had been] suppressed." *In re A.R.*, 295 Ill. App. 3d 527, 531, 693 N.E.2d 869, 873 (1998).

¶ 15    In the case *sub judice*, to determine if trial counsel was ineffective in not filing a motion to suppress respondent's inculpatory statements, we must decide if she was subject to custodial interrogation and, if so, whether her statements were voluntarily made.

¶ 16    In *Miranda*, 384 U.S. at 444, the United States Supreme Court held "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Those safeguards include warning a suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444.

¶ 17    Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

> "The determination of whether a defendant is 'in custody' for *Miranda* purposes involves '[t]wo discrete inquiries ***: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.' [Citations.] Thus, in determining whether a person is 'in custody' for purposes of *Miranda*, a court should first ascertain and examine the circumstances surrounding the interrogation, and then ask if, given those circumstances, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. [Citation.] With respect to the latter inquiry, the accepted test is what a reasonable person, innocent of any crime, would have thought had he or she been in the defendant's shoes. [Citation.]" *People v. Braggs*, 209 Ill. 2d 492, 505-06, 810 N.E.2d 472, 481-82 (2003).

¶ 18    Our supreme court has noted the circumstances establishing police custody are not always self-evident. *People v. Brown*, 136 Ill. 2d 116, 124, 554 N.E.2d 216, 219-20 (1990). However, "the Court in *Miranda* was concerned with interrogations that take place in a police-dominated environment containing 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' " *Brown*, 136 Ill. 2d at 124, 554 N.E.2d at 219-20 (quoting *Miranda*, 384 U.S. at 467). In looking at the circumstances of interrogation, courts look at several factors to determine whether a statement was made in a custodial setting, including:

"(1) the location, time, length, mood, and mode of the questioning; (2) the number of police officers present during the interrogation; (3) the presence or absence of family and friends of the individual; (4) any indicia of formal arrest procedure, such as the show of weapons or force, physical restraint, booking or fingerprinting; (5) the manner by which the individual arrived at the place of questioning; and (6) the age, intelligence, and mental makeup of the accused." *People v. Slater*, 228 Ill. 2d 137, 150, 886 N.E.2d 986, 995 (2008).

¶ 19    In this case, the evidence indicates respondent was not in custody for *Miranda* purposes when she made the statements at issue. Respondent was 15 years old at the time. See *J.D.B. v. North Carolina*, 564 U.S. ___, ___, 131 S. Ct. 2394, 2406 (2011) (noting a child's age, when known or objectively apparent to a reasonable officer, is a relevant consideration in the *Miranda* custody analysis). Dinkheller and Officer Hermsmeier came to respondent's classroom during her second-hour class and walked her back to Dinkheller's office. She was not taken to or questioned at the police station. See *People v. Giacomo*, 239 Ill. App. 3d 247, 255, 607 N.E.2d 329, 334 (1993) (finding 15-year-old's statements were voluntary when made, not at the police station, but at school, "a nonthreatening atmosphere"); *People v. Savory*, 105 Ill. App. 3d 1023, 1029, 435 N.E.2d 226, 230 (1982) (noting a room adjacent to the principal's office was a less coercive environment than the police station). Moreover, nothing indicates Hermsmeier handcuffed or physically restrained respondent. Only one law-enforcement officer was present in Dinkheller's office, and nothing indicates Hermsmeier displayed a weapon or exhibited a show of force. Also, no formal booking procedure or search of respondent's person took place before the questioning.

¶ 20    The questions posed by Officer Hermsmeier also do not show respondent was in custody. It appears the questioning was of limited duration. Moreover, the record does not show the officer badgered respondent or "continued to interrogate her with hypotheticals," as argued by respondent. See *People v. Vasquez*, 393 Ill. App. 3d 185, 192, 913 N.E.2d 60, 67 (2009) (finding the defendant was not in custody where police officers "did not question defendant aggressively, employ a hostile or accusatory tone, or badger defendant"). Hermsmeier's inquiry as to what respondent would do with the knife if she fought T.H. was prompted by her statements that she planned to fight T.H. that day and, when asked what she was planning to do with the knife, she said she did not know. Hermsmeier's use of a hypothetical shows the questioning was inquisitory ("what would have happened if you and T.H. got into a fight?") rather than accusatory ("You were going to stab T.H., weren't you?"). See *Savory*, 105 Ill. App. 3d at 1029, 435 N.E.2d at 230-31 (questioning of student at school appeared to be inquisitory rather than accusatory).

¶ 21    Based on the circumstances, a reasonable person in respondent's situation would not have felt she was in police custody during the questioning that took place in Dinkheller's office. Thus, no *Miranda* warnings were necessary.

¶ 22    Although respondent was not in custody at the time she spoke with Officer Hermsmeier, a noncustodial interrogation might, in special circumstances, be characterized as one where " 'the behavior of . . . law enforcement officials was such as to overbear [the suspect's] will to resist and bring about confessions not freely self-determined.' " *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)); see

also *Slater*, 228 Ill. 2d at 159-60, 886 N.E.2d at 1000 (stating "[e]ven where *Miranda* warnings are not required, the fifth amendment still demands that a defendant's confession be voluntary"). Thus, we will examine whether respondent's statements were voluntarily made.

"A confession is voluntary if it is the product of free will, rather than the product of the inherently coercive atmosphere of the police station. [Citation.] To determine whether the defendant's confession was voluntary, we consider the totality of the circumstances surrounding it, including the defendant's age, intelligence, education, experience, and physical condition at the time of the detention and interrogation; the duration of the interrogation; the presence of *Miranda* warnings; the presence of any physical or mental abuse; and the legality and duration of the detention ***." *People v. Nicholas*, 218 Ill. 2d 104, 118, 842 N.E.2d 674, 683 (2005).

¶ 23 Courts have also found that taking the confession of a juvenile is a sensitive concern. *In re G.O.*, 191 Ill. 2d 37, 54, 727 N.E.2d 1003, 1012 (2000). Thus, "the 'greatest care' must be taken to assure that the confession was not coerced or suggested and that ' "it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." ' [Citations.]" *G.O.*, 191 Ill. 2d at 54, 727 N.E.2d at 1012. When juveniles are involved, courts look at factors such as whether the juvenile had the opportunity to consult with an adult before or during interrogation, whether the police prevented the juvenile from conferring with a concerned adult, or whether the police frustrated the parent's attempt to talk with the juvenile. *G.O.*, 191 Ill. 2d at 55, 727 N.E.2d at 1012-13.

¶ 24 Here, the totality of the circumstances indicates respondent's statements were voluntarily made. The evidence does not indicate the meeting between respondent and Hermsmeier was lengthy or confrontational. Respondent did not ask to leave or request to speak with a family member. She was not in custody, placed under arrest, or interrogated at the police station. Further, nothing indicates Hermsmeier engaged in any physical or mental abuse or made threats or promises to respondent in an attempt to coerce or intimidate her into making an inculpatory statement. The record also indicates the 15-year-old respondent had previous contact with the police when she was suspended from school in Cedar Rapids, Iowa, for bringing a knife to school. See *In re J.J.C.*, 294 Ill. App. 3d 227, 234, 689 N.E.2d 1172, 1178 (1998) (the accused's previous experience with the criminal justice system is a factor to consider in determining the voluntariness of statements).

¶ 25 As respondent was not in custody for *Miranda* purposes and her statements were voluntarily made, respondent cannot show there was a reasonable probability that a motion to suppress would have been granted had one been filed by her attorney. Thus, respondent cannot establish she received ineffective assistance of counsel.

¶ 26 B. Sufficiency of the Evidence

¶ 27 Respondent argues the State failed to prove she brought the knife to school with the intention of using it unlawfully against T.H. We disagree.

¶ 28 "When a delinquency petition is filed, the State must prove the elements of the substantive offense charged beyond a reasonable doubt." *In re T.W.*, 381 Ill. App. 3d 603,

608, 888 N.E.2d 148, 154 (2008); see also *In re Jonathon C.B.*, 2011 IL 107750, ¶ 47, 958 N.E.2d 227, 238 (noting the reasonable-doubt standard applies in delinquency proceedings). "The reasonable doubt standard asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jonathon C.B.*, 2011 IL 107750, ¶ 47, 958 N.E.2d at 238. "The trier of fact has the responsibility to determine the credibility of witnesses, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence." *T.W.*, 381 Ill. App. 3d at 608, 888 N.E.2d at 154. Also, the "trier of fact is not required to disregard inferences which flow normally from the evidence before it." *Jonathon C.B.*, 2011 IL 107750, ¶ 60, 958 N.E.2d at 241.

¶ 29    A person commits the offense of unlawful use of weapons when she knowingly "[c]arries or possesses with intent to use the same unlawfully against another, *** [a] dangerous knife *** or any other dangerous or deadly weapon or instrument of like character." 720 ILCS 5/24-1(a)(2) (West 2010). Mere possession of a knife, such as a hunting knife, is not a crime. *People v. Kincy*, 106 Ill. App. 3d 250, 254, 435 N.E.2d 831, 834 (1982). Instead, for purposes of section 24-1(a)(2), "knowingly carrying or possessing a dangerous weapon *with intent to use the same unlawfully against another* constitutes the offense of unlawful use of weapons." (Emphasis added.) *Kincy*, 106 Ill. App. 3d at 254, 435 N.E.2d at 834. It is proof of that intent, "or circumstances from which such intent is reasonably inferrable," that is required. *People v. Sullivan*, 46 Ill. 2d 399, 403, 263 N.E.2d 38, 40 (1970).

¶ 30    Here, respondent told Dinkheller and Hermsmeier she had been having problems with T.H. and they were supposed to fight that day. Although respondent stated she did not know what she was planning to do with the knife, she eventually stated T.H. would probably get stabbed or cut if T.H. was beating her up during the fight.

¶ 31    As trier of fact, the trial court heard the testimony from Dinkheller and Hermsmeier and could reasonably infer respondent possessed the knife and intended to use it on T.H. later on that day during the fight. While defense counsel argued respondent only intended to use the knife in self-defense, the court could have found otherwise. We find a rational trier of fact could find respondent not only possessed the knife but also possessed it with the intent to use it unlawfully against T.H.

¶ 32                                    III. CONCLUSION

¶ 33    For the reasons stated, we affirm the trial court's judgment.

¶ 34    Affirmed.