**IN THE COURT OF APPEALS OF IOWA**

No. 14-1418
Filed May 20, 2015

**IN THE INTEREST OF M.L.,**
    **Minor Child,**

**M.L., Minor Child,**
    Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette Boehlje, District Associate Judge.

A juvenile charged with delinquent acts and subject to a consent decree appeals his residential placement. **REVERSED AND REMANDED**.

Gary Dickey of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Nichole Benes, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

A child challenges the performance of his counsel during juvenile delinquency proceedings. Specifically, the child contends when the juvenile court granted his application for a consent decree under Iowa Code section 232.46 (2013) on a pending delinquency petition for intimidation with a dangerous weapon by threats and suspended the proceedings, his counsel was ineffective in allowing him to be adjudicated for harassment in the first degree under section 232.47 in the same case. Because we agree the child did not receive effective representation, we reverse and remand for further proceedings.

## I. Background facts and proceedings

M.L. was a high school sophomore when he sent a series of text messages to two friends on September 24, 2013, expressing disappointment over losing his homecoming date. The messages carried ominous overtones. M.L. texted a photograph of three shotgun shells and wrote he wished he had "more ammo than 3" and "I think I'll go out in a bang" and "Who says I want to go alone?" One of M.L.'s friends called the police. When these messages came to light, the juvenile court issued an order for M.L.'s immediate detention on September 27, 2013. The order stated M.L. was charged with first-degree harassment.

The juvenile court held a detention review hearing on October 3, 2013. In its factual findings issued on October 8, 2013, the court recounted M.L.'s text messages, as well as noting the following circumstances:

> [M.L.] has a history at school of having outbursts and aggressive behavior. In his locker were discovered a tactical sling for a gun, a

black mesh face mask, airsoft bb's, fingerless shooting gloves and wrist straps. [M.L.] likes to play with airsoft guns with his friends after school. In the home, his mother discovered that the gun [M.L.] owns was in a bag with ammo and the trigger lock was removed without her knowledge.

The court also reviewed a disciplinary report from M.L.'s high school showing that on October 1, 2013, M.L. violated the school's good conduct policy by threatening to bring a gun to school. The court decided M.L.'s full-time detention continued to be necessary, explaining: "It is unclear whether this was a calculated attempt to place students in fear of [M.L.], whether it was a lapse in judgment, or whether [M.L.] has significant mental health and behavior issues that need to be addressed. For [M.L.'s] safety, as well as the safety of the community, detention is necessary."

Also on October 3, 2013, the Cerro Gordo County Attorney filed a delinquency petition, alleging M.L. committed intimidation with a dangerous weapon or threatened to commit such an act, in violation of Iowa Code section 708.6, a class "C" felony. The petition referred to the events on September 24, 2013.

On October 28, 2013, M.L.'s attorney sought a review hearing. Before a hearing occurred, the juvenile court received a report from juvenile court services (JCS) recommending M.L. be released under certain conditions, including house arrest with GPS monitoring and attendance at the Francis Lauer Youth Services (FLYS) day treatment program through the alternative high school. The court issued that order on November 10, 2013.

M.L. agreed to the court's scheduling of an adjudication hearing for January 2, 2014. On that date, at 1:17 p.m., the juvenile court issued an order of continuance, which stated: "The child desires to enter an admission to a charge of Harassment in the First Degree." The order set a hearing for February 6, 2014.

Despite continuing the delinquency matter, at 3:40 p.m. on January 2, 2014, the court filed a consent decree.[1] The filing stated that M.L. applied for and the parties proposed a consent decree to the charge of "Intimidation with a Dangerous Weapon—by Threats" in violation of Iowa Code section 708.6. The court granted the application and ordered "these proceedings are suspended and this matter is continued as provided in Section 232.46 of the Code." As terms of the decree, the court required M.L. to comply with a curfew as set by JCS, attend individual and family therapy as deemed appropriate by JCS, complete 120 hours of community services, undergo random drug screens, and participate in aggression replacement training and other anger management classes as deemed appropriate by JCS. The consent decree was to remain in effect for eighteen months unless the child was discharged sooner.

Despite the entry of the consent decree, on February 6, 2014, the same delinquency matter came before the juvenile court for an adjudication hearing pursuant to section 232.47. M.L. signed and initialed an adjudication stipulation that indicated he was currently on probation under the consent decree. As the

---

[1] The trial court papers include a court reporter certification indicating a Consent Decree Review proceeding was reported on January 2, 2014, but a transcription of that proceeding was not made part of our record on appeal.

factual basis for his offense, he admitted sending text messages to two friends on September 24, 2013, "threatening to take a gun to school and also a picture showing three bullets."

The stipulation also stated:

In exchange for State's agreement to enter into a Consent Decree on a related charge, the child has agreed to enter this admission and the parties jointly agree to a term of probation until the child's 18th birthday with successful completion of Francis Lauer Day Treatment and other probation terms prescribed by Juvenile Court Services as conditions of probation.

The disposition order, filed February 7, 2014, stated the parties waived hearing and "[t]he child plead guilty to the offense(s) of Harassment in the First Degree and the parties stipulated that as disposition the child should be placed on formal probation." The order further stated: "The child's involvement consisted of sending threatening text messages to a peer." Among other consequences, the court ordered M.L. to complete aggression replacement training and other anger management classes as deemed appropriate by JCS.

It was not until February 11, 2014, that the State filed an amended delinquency petition alleging M.L. committed the delinquent act of harassment in the first degree by communicating with fellow students on September 24, 2013.

During the 2013-14 academic year, M.L. attended the FLYS day treatment program through the high school. He was not able to meet the program's expectations for demonstrating effective emotional skills, communication, or problem solving, according to a JCS report. In fact, M.L. became so hostile in the program that he called the counselor a "cunt" in the classroom in early June 2014, resulting in his suspension for the last few days of the school year. JCO

Michele Olthoff, who supervised M.L., reported M.L.'s "level of open disrespect and veiled aggression" decreased over the summer, with the exception of two incidents in July when he was "extremely argumentative" and exhibited threatening behavior toward her. M.L. also regularly attended individual therapy sessions with Dr. Dale Armstrong during this period.

At the opening of a review hearing on August 25, 2014, the juvenile court recalled "there was a consent decree entered on one charge and then a formal adjudication on a count of harassment in the first degree." During the hearing, the juvenile court heard testimony on behalf of the State from assistant superintendent Harold Minear. Minear testified M.L., who earned high school credits while attending the FLYS day program, was "a very intelligent young man" and "academically is a very strong student." Minear testified the alternative high school continued to be an option for M.L., though M.L. "struggles with boundaries" which is an ongoing concern. The State also offered testimony from JCO Olthoff. She testified that for the first time in her twenty years of working for JCS she was unable to make a recommendation as far as placement. Olthoff testified M.L. had "a great deal of anger and aggression" and did not improve his coping skills even after twice completing the aggression replacement training. But she acknowledged sending M.L. to residential treatment could backfire and make matters worse for him.

M.L. offered testimony from Dr. Armstrong, the child's treating psychiatrist. Dr. Armstrong testified M.L. "had a chip on his shoulder," but the psychiatrist has seen progress in the child. "The whole challenge with any person his age is

putting him in the setting that allows him to grow and I believe with every bone in my body that he does not need to be in residential."

The State asked for "a higher level of care" for M.L. M.L.'s counsel argued against out-of-home placement, but asserted: "if the Court seeks consequence for [M.L.] not following through with Francis Lauer [treatment center], the Court has the ability to revoke the consent decree and then place him on further probation restrictions" including attendance at the alternative high school and outpatient treatment with Dr. Armstrong. At the close of the hearing, the juvenile court ordered M.L. to be placed in group care. M.L. now appeals that disposition.

## II.    Ineffective Assistance of Child's Counsel

On appeal, M.L. alleges he received ineffective assistance of counsel at the juvenile court proceedings. A child adjudicated to be delinquent has the right to the assistance of counsel at dispositional hearings and hearings to review a dispositional order. Iowa Code § 232.11(1)(e), (f) (2013). The right to counsel necessarily implies that counsel be effective. *Cf. Dunbar v. State*, 515 N.W.2d 12, 14 (Iowa 1994) (discussing postconviction relief counsel).

No reported Iowa case expressly addresses the standard for effective assistance of counsel in juvenile delinquency proceedings. In termination of parental rights proceedings, our courts have borrowed the test for effective assistance of counsel in criminal proceedings from *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988); *In re D.W.*, 385 N .W.2d 570, 579 (Iowa 1986); *In re D.P.*, 465 N.W.2d 313, 316 (Iowa Ct. App. 1990). Because juvenile proceedings are civil not criminal, the right is

guaranteed by the due process clause rather than the sixth amendment. *D.W.*, 385 N.W.2d at 579. We now hold the *Strickland* test for effective assistance of counsel should apply in the juvenile delinquency context, and join other state courts that have explicitly adopted that standard. *See, e.g., In re Marquita M.*, 970 N.E.2d 598, 602 (Ill. App. Ct. 2012); *In re Parris W.*, 770 A.2d 202, 206 (Md. 2001); *In re Welfare of L.B.*, 404 N.W.2d 341, 345 (Minn. Ct. App. 1987); *M.B. v. State*, 905 S.W.2d 344, 346 (Tex. Ct. App. 1995).

## III.   Scope and Standards of Review

Juvenile delinquency hearings are special proceedings that provide an alternative to the criminal prosecution of children where the best interest of the child is the objective. *In re J.A.L.*, 694 N.W.2d 748, 751 (Iowa 2005). We review juvenile court orders de novo. *Id.* We give weight to the factual findings of the juvenile court, especially when considering the credibility of witnesses, but are not bound by them. *In re J.D.F.*, 553 N.W.2d 585, 587 (Iowa 1996).

We also review due process claims de novo. *State v. Johnson*, 784 N.W.2d 192, 194 (Iowa 2010). "While it is not necessary that juvenile proceedings conform with all requirements of a criminal trial, the hearing must measure up to the essentials of due process and fair treatment." *In re Dugan*, 334 N.W.2d 300, 304 (Iowa 1983).

## IV.   Analysis of M.L.'s claims

M.L. alleges his attorney at the juvenile court proceedings was ineffective in two ways: (1) by allowing M.L. to plead guilty to an amended delinquency petition following the entry of a consent decree and (2) by not objecting to a

change in custody and placement in residential care after he was granted a consent decree. Because the entry of the consent decree is the common building block, we start with that procedure. The relevant statutory provision states in pertinent part:

> At any time after the filing of a petition and prior to entry of an order of adjudication pursuant to section 232.47, the court may suspend the proceedings on motion of the county attorney or the child's counsel, enter a consent decree, and continue the case under terms and conditions established by the court.

Iowa Code § 232.46(1).

A consent decree provides a way for juvenile proceedings to be suspended short of an adjudication of delinquency. *State v. Iowa Dist. Ct.*, 828 N.W.2d 607, 611 (Iowa 2013). It is "essentially a bipartite arrangement between the juvenile court and the allegedly delinquent child that is memorialized in a court order (hence the term 'consent decree')." *Id.* "The result of a successful probation under a consent decree would be that the case be dismissed without an adjudication of delinquency against the child." *In re Rousselow*, 341 N.W.2d 760, 762 (Iowa 1983).

In this case, the juvenile court entered a consent decree on January 2, 2014, based on a joint proposal from M.L. and the State. At that time, the only pending delinquency petition alleged M.L. committed the offense of intimidation with a dangerous weapon—by threats in violation of Iowa Code section 708.6. The application for the consent decree referenced that charge. In granting the consent decree, the court declared: "these proceedings are suspended and this matter is continued as provided in Section 232.46."

Despite that order suspending the proceedings and with no other delinquency petition filed, M.L. appeared before the juvenile court on February 6, 2014, for an adjudication hearing pursuant to section 232.47. The parties stipulated that M.L. be placed on formal probation for the offense of harassment in the first degree. Without any explanation for the timing, five days later the State filed an amended delinquency petition alleging M.L. committed the delinquent act of harassment in the first degree. Both the harassment charge and the intimidation charge cited to the same acts occurring on September 24, 2013.

M.L. contends his counsel performed below constitutional standards by allowing him to plead to an amended petition after previously entering a consent decree. On the prejudice prong, M.L. argues: "Had trial counsel insisted that the consent decree be enforced, the matter never would have come for a disposition review hearing under section 232.54." The State argues on appeal that trial counsel provided competent representation because the proceedings involved M.L.'s commission of "*two* separate crimes and not the substitution of one crime for the other."

The record does not support the State's position. Neither the original delinquency petition filed October 1, 2013, nor the amended petition filed February 11, 2014 alleged two separate counts against M.L. Both petitions are filed under the same juvenile court number and both refer to M.L.'s actions on the

same date—without differentiating specific acts to satisfy separate provisions of the criminal code.[2]

We acknowledge the parties' stipulation presented to the court on February 7, 2014, stated that M.L. agreed to admit to the harassment charge "in exchange" for the State's agreement to enter into a consent decree on "a related charge."[3] But we are persuaded by M.L.'s argument that trial counsel was ineffective in allowing M.L. to go forward with the adjudication for harassment under section 232.47 when the court had suspended the case in the order granting the consent decree on January 2, 2014.

After the juvenile court suspended the proceedings on January 2, the child should have been given the opportunity to comply with the terms and conditions of the consent decree before an adjudication proceeding in the same case was commenced under section 232.47. *See* Iowa Code § 232.46(5), (6). In addition, at the time M.L. applied for and received the consent decree on the intimidation charge on January 2, 2014, the terms and conditions authorized by section 232.46 did not include transfer of custody and placement at a residential facility. *See Iowa Dist. Ct.*, 828 N.W.2d at 612; *but see* 2014 Iowa Acts ch. 1141, § 74 (effective July 1, 2014).[4] Accordingly, M.L.'s trial counsel was ineffective in not

---

[2] The parties do not address the question whether harassment in the first degree is a lesser included offense of intimidation with a dangerous weapon by threats.

[3] We note a consent decree does not require the blessing of the county attorney. Iowa Code § 232.46(3); *In re J.J.A.*, 580 N.W.2d 731, 741 (Iowa 1998) (affirming juvenile court's entry of consent decree over State's objection). We also note M.L.'s consent decree did not mention any agreement that M.L. would admit responsibility for another offense.

[4] We presume the statute is to be prospective in its operation. *See* Iowa Code § 4.5.

objecting to M.L.'s placement in residential care after he was granted a consent decree under section 232.46.

We agree with M.L. that he was denied due process by virtue of the deficient performance of his attorney in the juvenile court proceedings. Trial counsel breached a material duty by allowing M.L. to be adjudicated delinquent for the offense of first-degree harassment when no petition was pending on that charge and after the court had granted M.L.'s request for a consent decree on the pending petition alleging intimidation for the same acts. *See State v. Halverson*, 857 N.W.2d 632, 638 (Iowa 2015) (holding counsel's error in not preserving claim could not be attributed to reasonable tactics or strategy). M.L. suffered prejudice as a result of counsel's errors because the juvenile court adjudicated him delinquent after suspending the proceedings and without allowing M.L. an opportunity to comply with the terms of the consent decree, and placed him in residential treatment when that placement was not an available consequence under section 232.46.

We vacate the February 7, 2014 disposition order and the August 26, 2014 review order.[5] We remand to the juvenile court for a determination whether M.L. has complied with the terms and conditions of the January 2, 2014 consent decree.

**REVERSED AND REMANDED.**

---

[5] Because we grant M.L. relief on his ineffective assistance of counsel claims, we do not need to address his contention that the State failed to prove residential treatment was the least restrictive alternative and in his best interest.